**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 13, 2012**

# In the Court of Appeals of Georgia

A12A0135. ROESSER v. THE STATE.

MIKELL, Presiding Judge.

Following the denial of his plea in bar asserting double jeopardy,[1] Christopher Roesser appeals,[2] contending that the trial court erred in ruling that he could be re-tried for voluntary manslaughter after the jury deadlocked on this charge. Roesser argues that because the jury acquitted him of the indicted offenses of malice murder, felony murder, and aggravated assault, the state is barred from further prosecution on

---

[1] "The denial of a plea of former jeopardy may be directly appealed without resort to the procedures for interlocutory appeal." *Baker v. State*, 263 Ga. App. 462, 466 (2) (588 SE2d 288) (2003), citing *Patterson v. State*, 248 Ga. 875-876 (287 SE2d 7) (1982).

[2] Roesser originally appealed to the Supreme Court of Georgia, which concluded that its subject matter jurisdiction had not been invoked and transferred the case to this Court.

the lesser included offense of voluntary manslaughter. We conclude that, in this case, a retrial on the voluntary manslaughter charge following a mistrial due to a hung jury does not violate the Double Jeopardy Clause of either the federal or state constitutions.[3] Therefore, we affirm the ruling of the trial court.

"When an appellate court reviews a trial court's decision on a plea in bar, we conduct a de novo review of the legal issues. Further, we must accept the trial court's findings on disputed facts and witness credibility unless those findings are clearly erroneous."[4] The record shows that Roesser fatally shot the victim, Keith Price, in a parking lot on the evening of December 20, 2006. Roesser was indicted on charges of malice murder, felony murder, aggravated assault, and three counts of possession of a firearm during the commission of a felony. Following a jury trial, he was convicted on all the indicted counts. The trial court subsequently granted Roesser's amended motion for new trial. In the second trial, Roesser's sole defense was that he acted in

---

[3] The Double Jeopardy Clause of the Fifth Amendment provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb," and is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U. S. 784, 794 (III) (89 SC 2056, 23 LE2d 707) (1969). Art. 1, Sec. I, Par. XVIII of the Georgia Constitution provides: "No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial."

[4] (Citations omitted.) *State v. Bair*, 303 Ga. App. 183 (692 SE2d 806) (2010).

2

self-defense[5] in firing his weapon and fatally injuring Price. At the trial's conclusion, the jury found him not guilty of malice murder, felony murder, aggravated assault, and one count of possession of a firearm during the commission of a felony (based on the aggravated assault charge); however, it was unable to reach a verdict on the other charges, including voluntary manslaughter, which had been charged at Roesser's request as a lesser included offense of the murder charges.

At the second trial, the state presented the testimony of Roger Allen Epstein, among others. Epstein was present when the shooting occurred, and he drove Price to the hospital. He testified that he set up a meeting for December 20, 2007, between Roesser, whom he had known for years, and Price, a recent acquaintance. Epstein testified that Roesser and Price had never met before; and that he wanted to "hook them up with each other," so Price could purchase marijuana from Roesser. Epstein drove Price to the meeting place, the parking lot of Roesser's employer, to meet with

_____

[5] OCGA § 16-3-21 (a) ("A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, . . . a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony").

3

Roesser. As soon as Roesser got in the back seat of the car, Price, who was in the front passenger seat, turned around and grabbed hold of him. Epstein heard Roesser say, "You got it," and Price released him. Roesser got out of the car, and Epstein heard a gunshot. Epstein started the engine at once and drove away. Once he realized that Price was injured, he drove straight to the hospital, where Price was pronounced dead. Epstein denied any discussion of a PlayStation 3; he denied seeing a gun or money; and he denied throwing anything out of the car.

Roesser took the stand on his own behalf and told a different version of the events. He testified that in December 2007 he wanted to buy a PlayStation 3 video game system as a Christmas gift for a child he knew. In order to avoid standing in line to purchase this popular item,[6] he arranged to meet Epstein in order to buy one or more PlayStations from him at $900 each. On December 20, Roesser brought $2,000 cash to work with him, leaving the cash in the glove compartment of his car. That evening, Epstein called to say he was waiting in the parking lot. Roesser went to his car and retrieved the $2,000 cash, as well as his handgun. He testified that he needed the handgun for protection at night. As he approached Epstein's vehicle, he saw Epstein

---

[6] Roesser introduced evidence that, in December 2006, a Sony PlayStation retailed for approximately $600, and people would wait in line in freezing weather for a chance to buy one.

in the driver's seat and Price, whom he had never seen before, in the front passenger seat. Roesser testified that the moment he got into the back seat of the car, Price grabbed him by his shirt collar, pointed a gun at him, and demanded his money. Roesser testified that he believed at the time that Price's weapon was real and that he feared for his life, so he produced the money and then opened the rear door in an attempt to escape. Price reached around to grab him again. Roesser testified, "I got out of the car and I tucked my head and fired my handgun one time." Without pausing to see where the shot struck, he immediately fled over the back fence, losing his eyeglasses in the process. Shortly afterward, he returned to his car and drove out of the parking lot, passing a police car. He did not stop, nor did he report the incident to police; instead, he drove to a friend's home, where he was arrested six weeks later, in February 2007.

Roesser's eyeglasses and $2,000 in currency were found on the ground in the parking lot later that evening. Also found at the scene was a plastic "gun."[7] Kelly Fite,

---

[7] This item was described by a police investigator as a "plastic toy pistol" and by defendant's expert, Kelly Fite, as "an air-soft pistol . . . a non-gun . . . a soft air gun [that] shoots six millimeter plastic pellets under spring pressure." Fite did not define the term "air-soft."

testifying for the defense as an expert in firearms and ballistics,[8] explained that the plastic gun found at the scene was a replica of, and almost identical in appearance to, a Colt Delta Elite .380 pistol, a true firearm. Fite testified that "all soft-air guns are replica guns"; that replica guns which resemble real firearms are required to be manufactured with a red end cap over the muzzle, so that they can be distinguished from real firearms; but that the red muzzle cap on the plastic gun found at the scene had been removed.

At the end of the trial, the jury acquitted Roesser on the murder and aggravated assault charges but deadlocked on the voluntary manslaughter charge;[9] and the trial court declared a mistrial as to that charge. The trial court denied Roesser's plea in bar,[10] and this appeal followed.

---

[8] The state stipulated to Fite's qualification as an expert.

[9] The jury verdict form indicates that the jury was dead-locked at eleven (not guilty) to one (guilty) on the voluntary manslaughter charge.

[10] The jury was also unable to reach a verdict as to two counts of possession of a firearm during the commission of a felony (based on the charges of malice murder and felony murder, respectively). Because Roesser had been acquitted on the predicate felonies, the trial court ruled that the state was barred from re-trying Roesser on those counts. This part of the trial court's ruling is not at issue in this appeal.

1. In his sole enumeration of error, Roesser asserts that a retrial on the voluntary manslaughter charge is prohibited by the Double Jeopardy Clause of the United States and Georgia Constitutions, and therefore that the trial court erred in denying his plea in bar. Roesser contends that in acquitting him of the murder charges, the jury necessarily determined that his conduct was justified because he acted in self-defense; and that, on retrial, the justification defense would be equally applicable to the voluntary manslaughter charge. Relying on *Yeager v. United States*,[11] he argues that the collateral estoppel doctrine "embodied in the Fifth Amendment guarantee against double jeopardy"[12] operates to prohibit his retrial on the mistried charge of voluntary manslaughter. Because our review of the record of prior proceedings in this case[13] convinces us that, in acquitting him on the murder charges, the jury did not necessarily

---

[11] 557 U. S. 110 (129 SC 2360, 174 LE2d 78) (2009).

[12] (Footnote omitted.) *Ashe v. Swenson*, 397 U. S. 436, 445 (90 SC 1189, 25 LE2d 469) (1970).

[13] See *Yeager*, supra, 129 SC at 2367 (II) (to determine what issues a jury has necessarily decided in rendering a verdict, "courts should examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration") (punctuation omitted), citing *Ashe*, supra at 444.

7

determine that Roesser acted in self-defense, we conclude that the doctrine of collateral estoppel does not apply in this case.

Roesser's reliance on *Yeager* is misplaced. It is true that the Supreme Court in *Yeager* reiterated that "[i]n *Ashe*, we squarely held that the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial."[14] Under the doctrine of collateral estoppel, or issue preclusion,[15] "when an issue of ultimate fact has once been determined by a valid and final judgment of acquittal, it cannot again be litigated in a second trial for a separate offense."[16] However, the facts presented in *Yeager* are distinguishable from the facts in the case at bar. In *Yeager*, a case arising from the Enron scandal,[17] the defendant was accused of multiple counts of federal securities law violations, which the Supreme Court grouped into "fraud counts" and "insider trading" counts.[18] The jury acquitted

---

[14] *Yeager*, supra, 129 SC at 2366 (II). See *Ashe*, supra at 443.

[15] The Supreme Court explained that "[c]urrently, the more descriptive term 'issue preclusion' is often used in lieu of 'collateral estoppel.'" (Citation omitted.) *Yeager*, supra, 129 SC at 2367 (II), n. 4.

[16] (Punctuation omitted.) Id., 129 SC at 2367 (II), citing *Ashe*, supra.

[17] *Yeager*, supra, 129 SC at 2363 (I).

[18] Id., 129 SC at 2364 (I).

him on the fraud counts but deadlocked as to the insider trading counts, and a mistrial was declared as to the hung counts.[19] Yeager argued that "the jury's acquittals [on the fraud counts] had necessarily decided that he did not possess material, nonpublic information" about the events at issue; and because on retrial the government would have to prove that he did possess such information, the "issue-preclusion component of the Double Jeopardy Clause barred a second trial of that issue."[20] The Supreme Court agreed, ruling that "if the possession of insider information was a critical issue of ultimate fact in all of the charges against [Yeager], a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element."[21]

In contrast, in the case before us, the jury verdict did not necessarily decide the issue of justification in Roesser's favor.[22] We first address the jury's verdict of

---

[19] Id.

[20] Id.

[21] Id., 129 SC at 2368-2369 (II).

[22] At the hearing on the plea in bar, Roesser adduced evidence from a former member of the jury to the effect that the juror's decision to acquit on the murder charges was based on his acceptance of Roesser's justification defense. This testimony, however, is irrelevant to the issue at hand. The issue before us is not whether the jury *could have* based its acquittals on Roesser's justification defense. As made clear in *Yeager*, the issue is whether the jury *necessarily* based its decision on its acceptance of this defense. Id., 129 SC at 2366 (II).

9

acquittal of malice murder. OCGA § 16-5-1 (a) provides that "[a] person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." "Express malice" means "that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof";[23] malice "shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart."[24] Thus, in order to convict Roesser of "malice murder," the jury would have been required to find beyond a reasonable doubt that he had the requisite intent – either express or implied malice. If the jury were unable to find that Roesser acted with either express or implied malice, it would be obliged to acquit on the malice murder charge. Thus, the jury would not have had to decide whether Roesser's conduct was justified as self-defense.

The jury also acquitted Roesser of felony murder[25] (predicated on the felony of aggravated assault) and aggravated assault with a deadly weapon.[26] We note that the

[23] OCGA § 16-5-1 (b).

[24] Id.

[25] OCGA § 16-5-1 (c) (a person commits felony murder "when, in the commission of a felony, he causes the death of another human being irrespective of malice").

[26] OCGA § 16-5-21 (a) (2).

10

offense of voluntary manslaughter requires proof of an element not found in malice murder, felony murder, or aggravated assault, that is, that the accused acted under "a sudden, violent, and irresistible passion."[27] In *Williams v. State*,[28] our Supreme Court effectively ruled that aggravated assault with a deadly weapon and voluntary manslaughter are mutually exclusive offenses.[29] Thus, Roesser's acquittal on the felony murder and aggravated assault charges does not change the double jeopardy analysis and would not bar retrial on the voluntary manslaughter charge.

Except as limited by the issue preclusion doctrine set forth in *Yeager*, which we have concluded does not apply in the case at bar, "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to

---

[27] OCGA § 16-5-2 (a) (a person commits voluntary manslaughter "when he causes the death of another human being under circumstances which would otherwise be murder *and if he acts solely as the result of a sudden, violent, and irresistible passion* resulting from serious provocation sufficient to excite such passion in a reasonable person") (emphasis supplied).

[28] 288 Ga. 7 (700 SE2d 564) (2010).

[29] Id. at 9 (2).

11

which the defendant was subjected."[30] Further, "under the double jeopardy provision in Georgia's constitution, if a jury cannot agree upon a verdict in a criminal case, the trial judge may declare a mistrial, and the accused may then be tried a second time for the same offense."[31] In our view, the case at bar is controlled by this Court's decision in *State v. Archie*,[32] where we held that an "acquittal on the indicted offense of murder would not bar retrial on the lesser included unindicted offense of voluntary manslaughter using the same indictment, as long as the next jury does not know about the murder charge."[33]

---

[30] (Punctuation omitted.) *Rower v. State*, 267 Ga. 46 (472 SE2d 297) (1996), citing *Richardson v. United States*, 468 U. S. 317, 326 (104 SC 3081, 82 LE2d 242) (1984). See generally *Blueford v. Arkansas*, __ U. S. __ (132 SC 2044, 182 LE2d 937) (2012) ("The Double Jeopardy Clause protects against being tried twice for the same offense. The Clause does not, however, bar a second trial if the first ended in a mistrial") (182 LE2d at 940). The *Blueford* decision, though instructive, does not directly apply to the case at hand, because it involved a jurisdiction (Arkansas) which applied a "single-verdict" rule and did not allow for partial verdicts, as Georgia does. Id. at 942 (I).

[31] (Citation and punctuation omitted.) *Rower*, supra.

[32] 230 Ga. App. 253 (495 SE2d 581) (1998).

[33] (Citation omitted.) Id. at 255. See generally *Patmon v. State*, 303 Ga. App. 151, 152 (693 SE2d 120) (2010) (after defendant's convictions for armed robbery and aggravated assault were overturned, retrial on these counts was not barred by jury's acquittal on murder, kidnapping with bodily injury, and other counts, because in acquittal, jury did not necessarily determine any fact central to issues involved in re-prosecution on convicted counts) (id. at 151,152-153).

12

We conclude that the doctrine of collateral estoppel (or issue preclusion) under the Double Jeopardy Clause does not operate to bar the state from retrying Roesser on the voluntary manslaughter charge.

2. An important factor distinguishing the case at bar from the United States Supreme Court decision in *Yeager*[34] is the doctrine of intent. The defendant in *Yeager* was charged with violating a modern federal statute regulating the securities markets.[35] Determining the requisite intent under such statutes has become "almost wholly mechanical."[36] By contrast, a conviction for violation of a statute regarding homicide requires precise consideration of carefully-defined degrees of specific intent.[37] It is possible that the jury in Roesser's case decided that the state had failed to prove the specific intent required for a murder conviction. A new jury might nonetheless find that the state has proved beyond a reasonable doubt the special mental attitude needed to establish voluntary manslaughter.

*Judgment affirmed. Miller and Blackwell, JJ., concur.*

---

[34] Supra.

[35] See id., 129 SC at 2363 (I), n. 1.

[36] Wm. J. Stuntz, The Collapse of American Criminal Justice (The Belknap Press of Harvard University Press, Cambridge, Mass., 2011), 303.

[37] Stuntz, supra, 260-262, 303.