S12G1846. ROESSER v. THE STATE.
(751 SE2d 297)

HUNSTEIN, Justice.

A jury acquitted Christopher Roesser of malice murder, felony murder, and aggravated assault, but was unable to reach a verdict on the lesser included offense of voluntary manslaughter. When the State sought to retry Roesser for voluntary manslaughter, he filed a plea in bar asserting double jeopardy based on collateral estoppel. The trial court denied the plea, and the Court of Appeals affirmed. See *Roesser v. State*, 316 Ga. App. 850 (1) (730 SE2d 641) (2012). We granted the writ of certiorari to consider whether the doctrine of collateral estoppel or issue preclusion prohibits a retrial. Because double jeopardy bars the prosecution from relitigating any issue decided by the jury's acquittal at the previous trial, we conclude that the doctrine of collateral estoppel prohibits the State from retrying Roesser for voluntary manslaughter. Therefore, we reverse.

A Gwinnett County grand jury indicted Roesser for malice murder, felony murder, aggravated assault, and three counts of possession of a firearm during the commission of a felony in connection with the shooting death of Kevin Price on December 20, 2006. At his first trial in 2008, a jury found Roesser guilty of all indicted charges. He filed a motion for a new trial, which the trial court granted on the grounds that it gave an erroneous jury instruction.

At his second trial in 2011, as detailed more fully in the Court of Appeals' opinion, the State presented the testimony of Roger Allen Epstein that he drove Price to Roesser's workplace so that Price could buy marijuana from Roesser. Epstein testified that within seconds of Roesser entering the car, Price grabbed Roesser by the collar; Roesser said, "you got it"; the dome light came on; and Epstein heard gunshots. Testifying at trial on his own behalf, Roesser told the jury that he met Epstein to buy a PlayStation 3 video game system, and Price grabbed him by the collar of his shirt, put a gun to his forehead, and said, "Give me your money, mf'er, or I'll kill you." After Roesser gave him the money, Price started to turn around. Roesser testified, "I got out of the car and I tucked my head and fired my handgun one time" before running away. Police found four spent shell casings, a broken plastic replica gun, empty blue pouch, and $2,000 in currency at the

scene; no marijuana was found. The State's theory was that the killing stemmed from a drug deal gone bad and that Roesser was not justified in shooting because the armed robbery, if it occurred, had ended when he escaped from the car. Roesser's sole defense was that he shot Price in self-defense, although he requested that the trial court give a jury charge on the lesser included offense of voluntary manslaughter. The jury acquitted Roesser of the indicted offenses of malice murder, felony murder predicated on aggravated assault, aggravated assault with a deadly weapon, and possession of a firearm during the commission of aggravated assault, but was unable to reach a verdict on voluntary manslaughter and the two other firearm possession counts. Following the jury's verdict, the trial court declared a mistrial on the voluntary manslaughter charge and ordered a retrial on it. On appeal, the Court of Appeals concluded that double jeopardy's doctrine of collateral estoppel or issue preclusion did not prohibit a retrial on the voluntary manslaughter charge. In granting certiorari, we asked the parties to address whether the Court of Appeals erred in affirming the trial court's denial of Roesser's double jeopardy claim based on the doctrine of collateral estoppel.

Roesser argues that collateral estoppel bars retrial for voluntary manslaughter because he was acquitted of charges that share the same critical issue of ultimate fact as voluntary manslaughter. See *Yeager v. United States*, 557 U. S. 110 (129 SCt 2360, 174 LE2d 78) (2009). He contends that a review of the entire record shows that the sole issue for the jury was whether Roesser acted in self-defense in shooting and killing Price.

The Double Jeopardy Clause in the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." In *Yeager*, the U. S. Supreme Court held that a jury's failure to reach a verdict on some counts should not be considered in determining the preclusive effect of an acquittal under the Double Jeopardy Clause. See *Yeager*, 557 U. S. at 121-122. "To identify what a jury necessarily determined at trial, courts should scrutinize a jury's decisions, not its failures to decide." Id. at 122. When there is "a critical issue of ultimate fact in .all of the charges against [the defendant], a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element." Id. at 123. In reaching its decision, the Court relied on its holding in *Ashe v. Swenson*, 397 U. S. 436 (90 SCt 1189, 25 LE2d 469) (1970).

The Supreme Court in *Ashe* "held that the Double Jeopardy Clause precludes the Government from relitigating any issue that

was necessarily decided by a jury's acquittal in a prior trial." *Yeager*, 557 U. S. at 119. To determine what a jury has necessarily decided, a court should

> examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

*Ashe*, 397 U. S. at 444 (citation and punctuation omitted). The "rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality"; courts should engage in a practical inquiry based on all the circumstances of the proceeding. Id. While the armed robbery trials in *Ashe* involved an acquittal on a single offense at one trial and a subsequent trial on a separate offense, the Court in *Yeager* extended the holding in *Ashe* to apply to a mixed-verdict case involving a multiple-count indictment with an acquittal on some counts and a mistrial on other counts. In this context, the Court held, the jury's failure to reach a verdict on certain counts was a "nonevent" that had no bearing on the determination of what issues had been determined by virtue of the verdicts that were reached. *Yeager*, 557 U. S. at 120.

To conduct an issue-preclusion analysis, courts examine the verdict and trial record to determine the facts that the jury necessarily decided in returning its verdict of acquittal and then "determine whether the previously determined facts constituted an essential element of the second offense." See *United States v. Ohayon*, 483 F3d 1281, 1286 (11th Cir. 2007) (citations and punctuation omitted). The doctrine of collateral estoppel will not bar a retrial "[u]nless the record of the prior proceeding affirmatively demonstrates that an issue involved in the second trial was definitely determined in the former trial[;] the possibility that it may have been does not prevent the relitigation of that issue." *Phillips v. State*, 272 Ga. 840, 842 (537 SE2d 63) (2000) (citation and punctuation omitted). In *Phillips*, we rejected the defendant's argument that the jury's acquittal on the aggravated assault with intent to rob count meant the jury necessarily found him not guilty of aggravated assault with a deadly weapon since "the jury could have concluded that Phillips assaulted the victim with a deadly weapon but did not do so with the intent to rob." Id. Therefore, we concluded that collateral estoppel did not prevent the State from retrying the defendant for felony murder based on the underlying felony of aggravated assault with a deadly weapon. Id.

In this case, a review of the entire record supports Roesser's argument that the jury necessarily determined that he acted in self-defense when it acquitted him of malice murder, felony murder, and aggravated assault in connection with Price's death. From the attorneys' opening statements through the jury's verdict, the issue presented to the jury was whether Roesser had acted in self-defense. The prosecutor in his initial statement told the jury that the question was "whether or not Mr. Roesser was justified in killing Mr. Price" and that the State would be "arguing to you that this is not a case of self-defense, that this was a murder." Roesser's attorney in his opening statement said the defense would be seeking a verdict of not guilty "based upon the fact that a person is justified in using self-defense to defend themselves against a forcible felony . . . when they reasonably believe their life is in danger." At trial, Roesser admitted that he shot and killed Price, but claimed that he shot to save his life, he was afraid that Price was going to kill him, and he felt that he was going to die that night. Other witnesses were questioned extensively on issues related to Roesser's claim of self-defense, including whether Epstein saw Price with a gun or heard him threaten Roesser, whether Price's gunshot wounds were consistent with Roesser's testimony that he shot as Price was moving toward him, and whether the physical evidence at the scene was consistent with Roesser's or the State's version of events. The primary dispute at the charge conference, as set out in more than 40 pages of transcript, was whether the trial court should give a jury charge that the use of force is not justifiable if the person is attempting to commit or in the commission of a felony. During closing arguments, Roesser's attorney repeatedly asked the jury to acquit Roesser of every count in the indictment and voluntary manslaughter because the prosecution could not disprove self-defense beyond a reasonable doubt. The prosecutor argued that there was no justification because Roesser did not use his gun in the car when he was in imminent danger, he had escaped and was on his way from danger when he shot Price, and it is "not self-defense to shoot when running away." Finally, the jury submitted a note that indicates they were focused during their deliberations on the issue of self-defense. The note said, in part, that the jury realized that:

> [i]f there is self-defense that we might have to acquit the defendant. [One juror] at this point wanted verification that does this mean he is not guilty for all charges. We said yes, if there is self-defense according to the information we are given, Mr. Roesser would have to be found not guilty on all counts.

Based on our review of the evidence, closing arguments, jury charge, and other relevant matters, we conclude that the jury in acquitting Roesser necessarily determined that he acted in self-defense when he shot and killed Price.

The Court of Appeals and the State identified two other issues that they believe were possibly decided by the jury: whether Roesser acted with malice and whether he committed the shooting under a sudden impulse as required for voluntary manslaughter. We disagree with the Court of Appeals to the extent it concluded that the jury could have determined whether the element of malice was established without having to decide whether his conduct was justified as self-defense. See *Roesser*, 316 Ga. App. at 855. As set out in the pattern jury instructions and as the jury was charged in this case, "Legal malice is not necessarily ill will or hatred, but it is the unlawful intention to kill without justification, excuse, or mitigation." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.10.10 (2012); see also *Williams v. Kemp*, 255 Ga. 380, 385-386 (338 SE2d 669) (1986) ("[u]nder state law malice aforethought comprises two elements: intent to kill and the absence of provocation or justification"). In addition, the trial court instructed the jury on self-defense as an affirmative defense, charging that justification is a defense to any crime based on the person's conduct and that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified. Thus, this jury was properly instructed that it needed to consider Roesser's self-defense claim in deciding whether he had the malice required to convict of murder. Even assuming the jury acquitted Roesser of malice murder because it found the State failed to prove that he acted with the required express or implied intent, that reason does not explain the basis for the jury's acquittal on the aggravated assault count and the felony murder count premised on the aggravated assault count, which do not require specific intent. See *Smith v. State*, 280 Ga. 490 (1) (629 SE2d 816) (2006).

On the other possible issue, the jury's failure to reach an agreement on the voluntary manslaughter count as a lesser included offense of the malice and felony murder counts was a "nonevent" under *Yeager* and plays no role in our determining what the jury necessarily decided by its acquittal. *Yeager*, 557 U. S. at 121-122. The State conceded at oral argument that no witness was questioned about whether Roesser acted with sudden, violent, and irresistible passion, and we have found nothing in the record related to voluntary manslaughter, other than the jury charge and a brief reference to it by each side during closing arguments. Roesser's attorney said at oral argument that he requested the instruction because he has found the instruction "to be a good thing" from experience, and the trial court

agreed to give the instruction without any discussion on whether the evidence at trial supported giving the charge. Roesser did not request the jury to return a verdict based on voluntary manslaughter but instead asked it to avoid a compromise and return a verdict of not guilty of voluntary manslaughter based on self-defense. The State also argued that the killing was not voluntary manslaughter: "The State contends that it is not a voluntary manslaughter, it was not a sudden impulse, it was a deliberate intention to shoot [Price] that was exhibited by the fact that [Roesser] shot three more times as they were leaving." Therefore, the record does not support the State's argument that the jury could have determined that Roesser acted under an irresistible passion in acquitting him of murder and aggravated assault.

In rejecting Roesser's double jeopardy claim, the Court of Appeals relied on its decision in *State v. Archie*, 230 Ga. App. 253 (495 SE2d 581) (1998). While *Archie* is a factually similar case, we conclude that it is not controlling here because it addressed only the issue of continuing jeopardy, not collateral estoppel. The court in *Archie* did not mention a double jeopardy claim of collateral estoppel or discuss any factual issues that the jury may have resolved in acquitting Archie of malice murder that would preclude the State from seeking to obtain a voluntary manslaughter conviction. See also *Yeager*, 557 U. S. at 123 (distinguishing between double jeopardy claim based on mistried counts and double jeopardy claim based on issue preclusion).

In this case, we hold that the jury in acquitting Roesser of malice murder, felony murder, and aggravated assault necessarily determined that Roesser acted in self-defense and that this issue of ultimate fact constitutes a critical element of voluntary manslaughter. Thus, we conclude that double jeopardy bars the State from prosecuting Roesser again for voluntary manslaughter.

*Judgment reversed. Thompson, C. J., Hines, P. J., Benham, Melton, Nahmias, JJ., and Judge David R. Sweat concur. Blackwell, J., disqualified.*

DECIDED NOVEMBER 18, 2013 —
RECONSIDERATION DENIED DECEMBER 11, 2013.

*Brian Steel*, for appellant.
*Daniel J. Porter, District Attorney, Wesley C. Ross, Assistant District Attorney*, for appellee.