300 Ga. 814
FINAL COPY


S16A1742. JONES v. THE STATE.


BOGGS, Justice.

In 2010, Daryl Keon Jones was tried before a jury on charges of malice murder, felony murder, and cruelty to children in the first degree in the death of his girlfriend's 17-month-old daughter.[1] The jury acquitted Jones of malice murder and was unable to reach a verdict on the charges of felony murder and cruelty to children, resulting in a mistrial on those counts. When the State retried Jones in 2012, the jury found him guilty of both felony murder and cruelty to children in the first degree. Jones now appeals from the denial of his motion for

---

[1] The crimes occurred on April 30, 2009. On February 10, 2010, a Glynn County grand jury indicted Jones on charges of malice murder, felony murder, and cruelty to children in the first degree. Jones was tried before a jury December 13-16, 2010, and acquitted of malice murder. The jury could not reach a verdict as to the charges of felony murder and cruelty to children in the first degree. The trial court declared a mistrial on those counts, and when the State sought to retry Jones, he filed a plea in bar on double jeopardy grounds asserting that collateral estoppel barred his retrial. The trial court denied Jones' plea in bar, and he was retried before a jury August 13-16, 2012. The jury found him guilty of felony murder and cruelty to children in the first degree. Jones was sentenced to life in prison. His motion for new trial filed on August 24, 2012, was denied on January 25, 2016. His appeal was docketed in this Court for the September 2016 term and orally argued on October 3, 2016.

new trial, arguing that the evidence was insufficient to sustain his convictions, and asserting that the trial court erred in denying his plea in bar on double jeopardy grounds. We disagree and affirm.

1. Viewed in the light most favorable to the verdict, the evidence presented at Jones' second trial showed that the 17-month-old victim, B. H., and her mother lived with Jones, who was the mother's boyfriend, and Jones' three children from a prior marriage, including his eight-year-old son, A. J.

On April 30, 2009, B. H.'s grandfather went to Jones' apartment at noon to visit B. H. and stayed for three hours to play with her. He described her as fully aware and awake throughout the visit, but noticed small bruises on top of her head and on her right eyebrow. The grandfather testified that a month earlier, he had spoken to the mother about the bruises B. H. "had gotten over some period of time. . . . [B. H.], especially during the last two months of her life, had constant bruising."

When the grandfather left the apartment at around 3:00 p.m., B. H. seemed fine. Some time after this, the mother left to attend a class, and Jones was left alone in the apartment with the children. That afternoon, A. J. heard crying and noise and witnessed Jones grab B. H. by the back of the head and hit her

2

forehead onto the living room floor several times. A. J. went outside for a while and then to his room. Moments later, he heard a "big boom," and when he looked, B. H. "was on the ground and she wouldn't blink and her eyes were open." Jones picked B. H. up, checked her pulse, and began administering CPR. A. J. testified that he had seen Jones on other occasions choke B. H. and similarly slam her head onto the floor while telling her to "be quiet or shut up," but had not told anyone what he witnessed because he was afraid.

B. H. was taken to the hospital by ambulance, and though still breathing, was determined to be "very nearly brain dead." She had multiple facial bruises and retinal bleeding, and a CT scan revealed her brain was swelling and covered with blood. The physician who treated her testified at trial that the bleeding was consistent with cases involving abuse or "very, very high speed car accidents where a child has been ejected and rolled," and that B. H.'s injuries were not consistent with a fall or with an underlying medical condition. She concluded that B. H. would "have had to take multiple, repetitive beatings to the head" to result in the injuries she sustained. B. H. died from her injuries when repeated CPR attempts became futile.

A forensic pathologist performed an autopsy on B. H. and observed 36

external injuries and bruises to her head and face, some of which were old, healing injuries and some of which were recent, and 58 external injuries to her entire body. Additionally, the right side of her brain was flattened. His examination revealed hemorrhages, swelling of the brain, and a completely transected corpus callosum, which divides the two halves of the brain. The pathologist agreed with the treating physician that B. H.'s injuries could not have been caused by an underlying medical condition or an ordinary fall, and that the cause of death was multiple blunt force injuries.

The evidence outlined above was sufficient to authorize a rational jury to find beyond a reasonable doubt that Jones was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); Walden v. State, 289 Ga. 845, 846 (1) (717 SE2d 159) (2011) ("The jury was free to reject Appellant's version of events, which it obviously did." (Citations and punctuation omitted.))

2. Jones asserts that the trial court erred in denying his plea in bar because double jeopardy prohibited his retrial. "The allied doctrine of issue preclusion ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment." (Citations omitted.) Bravo-Fernandez v. United

States, __ U. S. __ (I) (A) (137 SCt 352, 196 LE2d 242) (2016). The United States Supreme Court "first interpreted the Double Jeopardy Clause to incorporate the principle of issue preclusion in Ashe v. Swenson, 397 U. S. 436, 90 SCt 1189, 25 LE2d 469 (1970)." (Footnote and citations omitted.) 137 Sct at 358 (I) (B). The Court in Ashe held that the rule of collateral estoppel in criminal cases is to be applied "with realism and rationality." Ashe, supra, 397 U. S. at 444.

> Thus, rather than merely examining the verdict, to determine the preclusive effect of an acquittal the court must examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

(Citations and punctuation omitted.) Giddens v. State, 299 Ga. 109, 114 (2) (a) (786 SE2d 659) (2016), citing Ashe, supra. And "[t]o effectuate this preclusion, the defendant has the burden of proving from the record what facts were 'actually and necessarily decided in his favor.'" (Citation omitted.) Id. at 113 (2) (a).

It is relevant to our analysis here that, in Yeager v. United States, 557 U. S. 110 (129 SCt 2360, 174 LE2d 78) (2009), the Supreme Court explained that

5

a jury's inability to reach a verdict "should play no role in determining the preclusive effect of an acquittal. [Cits.]" Id. at 117 (I). The Court reasoned that

> [a] hung count is not a "relevant" part of the "record of [the] prior proceeding." See Ashe, 397 U. S., at 444, . . . Because a jury speaks only through its verdict, its failure to reach a verdict cannot--by negative implication — yield a piece of information that helps put together the trial puzzle. A mistried count is therefore nothing like the other forms of record material that Ashe suggested should be part of the preclusion inquiry.

Id. at 121 (II).

With these principles in mind, we turn to Jones' argument that his retrial was barred by the principle of collateral estoppel embodied in the Double Jeopardy Clause. The original indictment charged Jones with malice murder for "unlawfully and with malice aforethought, caus[ing] the death of [B. H.] by inflicting multiple blunt force injuries to her head and face," cruelty to children in the first degree for "maliciously caus[ing] [B. H.] cruel and excessive physical pain by inflicting multiple blunt force injuries to her head and face," and felony murder for causing the death of B. H. "while in the commission of the felony offense of cruelty to children in the first degree" as alleged in the cruelty to children count.

The jury acquitted Jones of malice murder and was unable to reach a

6

verdict as to felony murder and cruelty to children in the first degree. Jones argues that because the jury acquitted him of malice murder, it necessarily determined "the issue of ultimate fact" — that he did not inflict "multiple blunt force injuries to the head and face of [B. H.]," and he therefore could not be retried for the other two offenses that allege the same fact. His argument here requires us to conduct an examination of the record of the prior proceeding, "taking into account the pleadings, evidence, charge, and other relevant matter," to determine whether a rational jury could have grounded its verdict on an issue other than the one Jones "seeks to foreclose from consideration." (Citation and punctuation omitted.) Giddens, supra, 299 Ga. at 114 (2) (a).

In opening statements at the first trial, the State focused upon A. J.'s testimony that he witnessed Jones abuse B. H. on this and other occasions as well as the forensic evidence of the age and extent of her injuries and the cause of her death. Jones' counsel argued in opening that B. H. often fell and hit her head, that the evidence would show why A. J. made the allegations against Jones, and that Jones "is not the one that should be before this Court on this."

At trial, Jones testified and denied killing B. H., explaining that he loved the child. When asked about the circumstances of her death, Jones explained that

7

he went to get a diaper for B. H., and when he returned, A. J. was in the room with her and she was on the floor. He then picked her up and panicked when he observed that her head was slumped over. Jones called B. H.'s mother and then called 911. He testified further that he administered CPR to B. H. until emergency personnel arrived. A. J., ten years old at the time of the first trial, testified that when he came inside the house to get a drink, he "heard [B. H.] crying and then a big boom, and then crying, and then a big boom. And I saw my dad hit her head on the ground." A. J. stated further that before the day of the incident, he "would see my dad choking her . . . and banging her head into the ground" while telling her to "shut up." He explained that when he witnessed these acts, he "didn't say anything. I would either walk into my room or go back outside." A. J. testified that he stopped being afraid of Jones "[w]hen all this happened . . . because he was on like house arrest and he couldn't really hurt me physically." An investigator testified that A. J. told him Jones slammed B. H.'s forehead into the ground on the day of the incident and demonstrated how Jones did so. He testified further that when he asked A. J. why he did not disclose this information to a DFACS worker on the day of the incident, A. J. stated that "he felt intimidated. He didn't want to say anything. His father was in the residence,

8

and he felt like he couldn't say anything with his father present."

In closing arguments, Jones' counsel questioned A. J.'s truthfulness and argued that the evidence points to him as the person who caused B. H.'s death. Counsel summed up his argument asking the jury to find Jones not guilty on each count, asserting that he "didn't do it."

In its instructions to the jury, the trial court charged that for murder, "the homicide must have been committed with malice," and that for cruelty to children in the first degree, the cruel and excessive physical pain must have been maliciously caused. In connection with the crime of first degree cruelty to children, the court instructed that malice "means an actual intent to cause . . . physical pain, without justification or excuse. Malice is also the wanton and willful doing of an act with awareness of a . . . plain and strong likelihood that such particular harm may result." The court further instructed that cruelty to children in the first degree is a felony, and that felony murder is committed when a person causes the death of another "with or without malice" in the commission of a felony.

Jones asserts that he did not offer any alternative theories, arguing only that he did not commit the crimes. The parties argued in opening and closing

about whether Jones was guilty or innocent of the crimes generally. The State also argued in closing that Jones "snap[ped]" because he had just returned from dialysis and because of the added responsibility of being the primary caregiver for B. H. while her mother was in school, in addition to caring for his own three children: "Good people sometimes do bad things. Good people sometimes snap. I submit to you that's what happened. [Jones] just could not control the stress and frustration." Based upon our review of these arguments, the evidence outlined above, and the jury charge, we conclude that Jones has not met his burden of proving that whether he "inflict[ed] multiple blunt force injuries to [the] head and face [of B. H.]" was "actually and necessarily decided in his favor." See Giddens, supra, 299 Ga. at 113 (2) (a) (citation and punctuation omitted). In light of evidence that B. H. had old healing injuries, Jones attempted CPR to prevent her death and testified that he loved the child, and the arguments presented in closing, a rational jury could have grounded its verdict of acquittal on malice murder in the first trial on a finding that Jones did not have "malice aforethought," or an intent to kill B. H. See, e.g., United States v. El-Mezain, 664 F3d 467, 553-555 (II) (K) (1) (5th Cir. 2011) (record and jury charge demonstrated that rational jury could have acquitted on conspiracy count

10

under one Code section based on fact that was not essential element of second conspiracy count under different Code section); United States v. Howe, 590 F3d 552, 557-558 (II) (C) (1) (a) (8th Cir. 2009) (prosecution not estopped from prosecuting defendant on underlying kidnapping count when jury could have acquitted him of felony murder predicated on kidnapping and/or robbery without ever passing judgment on whether he participated in kidnapping); State v. Glenn, 9 A3d 161, 167-168 (I) (N.H. 2010) (although defendant contested all elements of crime during trial, "jury could have based its acquittal for the first degree felony murder on other grounds, such as the defendant did not attempt to rob the victim at the time of the shooting"). Compare Roesser v. State, 294 Ga. 295, 298-299 (751 SE2d 297) (2013) (review of entire record supported conclusion that jury in acquitting defendant determined that he had acted in self-defense).

Jones argues that the State did not present the jury with multiple theories of malice and intent, and that the jury necessarily decided he did not maliciously intend to injure B. H. But as explained above, Yeager prohibits consideration of the jury's failure to reach a verdict on the cruelty to children count (and the felony murder count predicated on cruelty to children), in determining the

preclusive effect of an acquittal on malice murder. In any event, a finding that an accused did not intend to kill the victim does not preclude a finding that he or she intended to cause the victim physical pain. See Francis v. State, 296 Ga. 190, 193 (1) (766 SE2d 52) (2014) ("malice aforethought comprises two elements: intent to kill and the absence of provocation or justification") (citation omitted); Sears v. State, 290 Ga. 1, 3 (3) (717 SE2d 453) (2011) (approving instruction that child cruelty involves intent to cause physical pain without justification or excuse).

As Jones has failed to prove that collateral estoppel applies in this case, the trial court did not err in denying his plea in bar based on double jeopardy.

Judgment affirmed.  All the Justices concur.

Decided February 27, 2017 – Reconsideration denied March 30, 2017.

Murder. Glynn Superior Court. Before Judge Harrison.

James A. Yancey, Jr., for appellant.

Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General, for appellee.