## 64268. BELL v. THE STATE.

BIRDSONG, Judge.

Charles Edward Bell was indicted for arson in the first degree, and on a second count for felony murder, arising out of a fire in an abandoned warehouse in which firefighter Scott Duncan died. A mistrial was declared as to Count 2, felony murder; a verdict of guilty was returned as to Count 1, arson in the first degree. Bell appeals.

*Held:*

1. Appellant contends this verdict of guilty as to Count 1 arson in the first degree is fatally infected, and not a lawful verdict. At the end of the first day of deliberation, the jury sent the trial judge a written message stating that it had "come to a decision on count one. On count two, we the jury, cannot agree." Without telling counsel what the verdict was, the trial judge proposed that he could accept the verdict as to Count 1 and either grant a mistrial as to Count 2 or in the morning give a "dynamite" charge as to Count 2. State's counsel indicated he wanted the jury to further deliberate as to both counts. Defense counsel requested the mistrial as to Count 2, but when assured the charge could be tried again, requested a recess until the following morning to advise his client. The trial judge instructed the jury to continue deliberations, which they did for forty minutes more. The trial judge then recessed court for the night, after instructing the jury "not to undertake to obtain any information concerning this matter" and not to discuss the case.

The following morning defense counsel apprised the court that an incorrect and prejudicial article had appeared in the previous evening's newspaper, which stated that a gas station attendant at trial "identified [appellant] Bell as the man he saw rummaging through trash to find an oil can and who eventually purchased 40 cents worth of gas." In fact, at trial the witness could not identify anyone as the man who found the oil can and purchased the gas. Defense counsel moved for mistrial as to both counts after the trial court questioned the jurors individually and determined that six jurors had read the article. These six jurors were not asked any further questions concerning the newspaper article, nor given any instructions; defense counsel, in any case, contended the prejudicial effect of the article could not be cured. The trial court finally decided that the jury had already reached a verdict, and had "written a verdict as to Count 1 on the indictment" the previous day, and since this verdict was guilty it could not have been affected by the subsequent newspaper article. The jury was called back in and simply instructed to retire and determine "if your decision of yesterday [as to Count 1] still stands . . . [i]f you felt like you were in a unanimous decision on yesterday, you can make that your verdict; or if you were not unanimous in that decision, then certainly, you do not have to have that as your verdict. . . . [I]f you had come to a unanimous decision on a count yesterday, then would you please enter that on the indictment. . . . Determine if the decision you made yesterday was in fact . . . unanimous . . . and should be entered as a verdict of the jury. If it was, sign it. . . ." The jury was instructed to do nothing as to Count 2. The jury retired. It was dictated into the record that on the previous

day the jury wrote on the indictment "we find the defendant guilty of arson in the first degree," but that the statement was not signed by the foreman. This indictment was delivered back to the jury. After about fifteen minutes of consideration, the jury returned and announced that it had reached an unanimous verdict, and that it "was the unanimous verdict of the jury on yesterday afternoon." The trial court entered verdict of guilty as to Count 1 and declared a mistrial as to Count 2.

The *legal* verdict was returned after half the jury had, contrary to instructions, read a grossly prejudicial newspaper article. However, the judge's logic — that since the "verdict" of guilty was reached before the article was read by jurors, the jury could not have been prejudiced by the article — ultimately is unassailable.

The decision reached the day before was not a verdict under law and was not expressly accepted by the trial court. We held in *Irvin v. Grant,* 15 Ga. App. 269 (82 SE 819): "A verdict is not a verdict in law until received and published in open court. *Handley v. McKee,* 8 Ga. App. 570, 573 (70 SE 94). . . . Where a jury agree on their verdict, write it out, have it signed by their foreman, and deliver it to the clerk, by the direction and in the presence of the judge, it is 'published.' *Ferrill v. Perryman,* 34 Ga. 576 . . . ." In *Handley v. McKee,* supra, p. 573, we said: "The court below did not know judicially that any verdict was ever found by the jury, whatever the individual judge of the court may have subsequently learned. . . . The information which he got from an inspection of the petition handed to him by the foreman of the jury was information which he received as an individual, and not as a judge of the court. There can be no verdict returned by a jury, unless the same is received and published in open court. . . ." See also Code Ann. § 110-107.

The only legal verdict in this case was published after six members of the jury read a newspaper article stating incorrectly and prejudicially that there was particular evidence of appellant's guilt. (As to infected verdicts and improper jury conduct, see generally *Maltbie v. State,* 139 Ga. App. 342 (1) (228 SE2d 368); and see *Battle v. State,* 234 Ga. 637 (217 SE2d 255); *Smith v. State,* 218 Ga. 216 (2) (126 SE2d 789); *Atlanta Newspapers v. State of Ga.,* 216 Ga. 399 (2) (116 SE2d 580)). It might be argued that the jury's verdict of guilty could have been affected by the improper conduct in reading the prejudicial article, because before the article appeared and was read by half the jury, the trial court expressly declined to accept their decision as to Count 1 as the verdict in the case; and if the article had never existed the jury, the next morning, might very well have deliberated as to Count 1 and 2 all anew and acquitted the appellant or mistried at least. But this is not what happened in the case. The

jury reached a decision and returned a "verdict" before the prejudicial article appeared and although the trial court did not then accept and publish it, it could do so the following morning on its own motion and was not obliged to declare a mistrial because something had in the meantime occurred which could not conceivably have affected the earlier decision. The jury in this case confirmed that its verdict of guilty the day before was unanimous.

We conclude at every turn that it is " 'highly probable that the error [of jury misconduct] did not contribute to the judgment' " (*Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869); *Cauley v. State,* 130 Ga. App. 278 (203 SE2d 239)), because the jury had already reached its decision of guilty before the improper conduct, and it is therefore highly probable that the legal verdict was not infected.

2. In the same vein, appellant contends the trial court erred in questioning the jury about their verdict before they published the same. It should be clear from what we have said that the court did not question the jury about its verdict in any way that would infect the verdict.

3. Appellant contends the trial court erred in failing to grant a mistrial after the prosecutor in closing argument put appellant's character in issue. The prosecutor said: "He [appellant] talks about criminal records [of state's witnesses who were acquaintances of appellant]. What do you expect to find in the recovery center. You are not going to find deacons and Sunday School teachers there. They are his friends. You know what they say, birds of a feather flock together."

Although we do not condone such statements, we do not find it places the appellant's character in issue so as to constitute error sufficient to reverse the case. The statement was made in connection with defense counsel's evidentiary attacks and closing arguments on state witnesses' credibility via their criminal records. It is a fact in the evidence that appellant and these witnesses were associates and frequenters of the same place and station in life, which the evidence showed was hardly elevated. The prosecutor's statement was made in response to attacks on the witnesses' credibility and states only what the evidence permits the jury to conclude in the case, that if the witnesses had criminal records they were nevertheless in a position to speak credibly because they were appellant's friends from the recovery center and had close association with him. *Holmes v. State,* 148 Ga. App. 817 (253 SE2d 237); *Dudley v. State,* 148 Ga. App. 560 (251 SE2d 815).

4. The evidence is not insufficient to support the verdict. Appellant argues that the only basis from which it could be found that, as alleged in the indictment, appellant "did knowingly and

intentionally by means of fire, damage a building . . . under such circumstances that it was reasonably foreseeable that human life might be endangered," was the foreseeability of death of a firefighter responding to the fire alarm; and that if such is a permissible basis for the verdict, all arson will constitute arson in the first degree. There is evidence in this case that appellant knew other persons frequented this abandoned building, that he knew that one particular person was in the building when the fire was set, and that he knew three or four people were in the building and when asked if they got hurt, "said he didn't give a damn they shouldn't have been in there. They should have had a room somewhere." The evidence is sufficient from which a reasonable trier of fact could rationally find proof of guilt beyond a reasonable doubt. *Turner v. State,* 151 Ga. App. 169, 170 (259 SE2d 171).

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED SEPTEMBER 10, 1982 —
REHEARING DENIED OCTOBER 1, 1982 — 

*Donald C. Turner,* for appellant.

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Joseph J. Drolet, John M. Turner, Assistant District Attorneys,* for appellee.

ON MOTION FOR REHEARING.

Appellant seeks a rehearing on the issue of the illegality of the verdict which was accepted and published after half the jury read a newspaper article reciting false and prejudicial evidence of appellant's guilt.

The circumstances of this case are unique and troublesome. They present an analytical riddle difficult to unravel. But at every turn of the maze and with constant concern for the rights of the appellant to a fair, uninfected verdict we met the same wall: the jury reached a decision and offered a verdict of guilty to Count 1 of the indictment before any of them read the prejudicial newspaper article. The trial court was legally empowered to accept that decision as the verdict when it was offered, and was as empowered to accept it the next morning without permitting further deliberation by the jury as to appellant's guilt.

No one can doubt that if the jury had offered an acquittal as its verdict, and then read a prejudicial article reciting false evidence of appellant's guilt, the trial judge should the next morning be required to accept the verdict of acquittal instanter. If he granted a mistrial, it would be error, so far as to suggest the appellant had no right to his

uninfected verdict of acquittal. The same logic must apply when the jury offered as the verdict its uninfected determination of guilt, for the object of justice, which is to seek the truth, is as available to the state as well as to the criminal defendant.

While in a criminal trial the state has all the burdens, and the defendant has most of the rights, he does not have the right to speculate, as a legal presumption, that although the jury had already heard the evidence and offered its uninfected verdict of guilty as to one count, which the court had no power to reject, the jury *might* have changed its mind as to that count while deliberating on another count *if* the prejudicial article had not been read by half the jury. That hypothetical proposition, which is so highly speculative as to be nearly fantasy, is the essence of the appellant's theory in this case, and it does not bear the weight of analysis.

*Motion for rehearing denied.*