**WHOLE COURT**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0277. WASHINGTON v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Devin Washington was convicted of possessing a firearm during the commission of a felony and acquitted of malice murder. The trial court also declared a mistrial as to a charge against him for felony murder. On appeal, Washington argues, *inter alia*, that the trial court erred by declaring a mistrial as to the charge of felony murder and, accordingly, that double jeopardy bars a second prosecution such that the trial court should have granted his plea in bar. For the reasons set forth *infra*, we remand the case for further proceedings consistent with this opinion.

Viewed in the light most favorable to the verdict,[1] the record reflects that in the early morning hours on the day in question, Devin Washington and the victim, Preshawn Williams, arrived at an Augusta nightclub in a Jeep driven by Williams. At the same time, Marcus Washington (no relation to Devin)[2] arrived at the club in a Monte Carlo driven by an acquaintance and accompanied by Williams's cousin. When Marcus prepared to enter the club, he was suddenly attacked from behind by Devin, and the two continued to scuffle in the parking lot until the club's owner demanded that they leave the premises.

Marcus returned to the Monte Carlo and Devin returned to the Jeep, which was parked beside the Monte Carlo. Marcus demanded that the driver unlock the Monte Carlo so that he could get inside the vehicle, but she hesitated to do so and passed the keys to Williams's cousin. The cousin eventually unlocked the Monte Carlo and Marcus immediately retrieved a firearm from beneath the front-passenger seat. At that point, a gun battle erupted between Marcus and Devin (who, according to witnesses

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

[2] To avoid any confusion, we will refer to Devin Washington and Marcus Washington by their first names.

and Marcus, had been threatening to shoot if Marcus got into the Monte Carlo).[3] At some point, Williams, who had reentered the Jeep, was shot in the leg and head by two of Marcus's bullets, and he subsequently died as a result of the head injury.

Thereafter, Marcus and Devin were jointly indicted on charges of malice murder, felony murder, and possession of a firearm during the commission of a felony.[4] At the conclusion of the trial, the jury found both defendants not guilty of malice murder but guilty of possessing firearms during the commission of a felony. As to felony murder, the jury acquitted Marcus, but the trial court declared a mistrial as to Devin. Devin then filed a motion for new trial and a plea in bar as to felony murder. The trial court denied both, and Devin now appeals.

1. First, Devin contends that the trial court erred by declaring a mistrial as to felony murder when the verdict form reflects an acquittal on that charge, making a subsequent prosecution barred by double jeopardy. Thus, Devin contends that the trial court erred by denying his plea in bar. But because the state of the record is such that

---

[3] Marcus also claimed that Williams threatened to kill him and fired shots at him as well.

[4] Both requested that the trial court sever their trials, but the court denied these motions.

we cannot, at this time, conduct meaningful appellate review of these claims, we must remand to the trial court for additional findings of fact.

We begin by recognizing that the constitutional prohibition against double jeopardy was designed to "protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."[5] Indeed, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution[6] serves to "limit the Government to a single criminal proceeding to vindicate its very

---

[5] *Green v. United States*, 355 U.S. 184, 187 (78 SCt 221, 2 LE2d 199) (1957); *see Ball v. United States*, 163 U.S. 662, 671 (16 SCt 1192, 41 LEd 300) (1896) ("The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense.").

[6] U.S. Const. Amend V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; *nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb*; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." (emphasis supplied)); *see also* Georgia Const. Art. 1, Sec. 1, Para. XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial.").

4

vital interest in enforcement of criminal laws."[7] Thus, after a jury is impaneled and sworn, "jeopardy attaches, and the defendant normally has a right to have [his] trial completed by that particular tribunal."[8] Accordingly, if a mistrial is declared without a defendant's consent or over his objection, "the defendant may be retried only if there was a 'manifest necessity' for the mistrial."[9] The entry of a mistrial, then, is examined under the "manifest necessity" standard established by the Supreme Court

---

[7] *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (I) (97 SCt 1349, 51 LE2d 642) (1977) (punctuation omitted) (quoting *United States v. Jorn*, 400 U.S. 470, 479 (II) (91 SCt 547, 27 LE2d 543) (1971)).

[8] *Harvey v. State*, __ Ga. __, __ (2) (a) (770 SE2d 840) (2015); *see Smith v. State*, 263 Ga. 782, 783 (1) (439 SE2d 483) (1994) ("Once [defendant's] jury was impaneled and sworn, jeopardy attached, and he was entitled to be acquitted or convicted by that jury." (punctuation omitted)).

[9] *Smith*, 263 Ga. at 783 (1); *see also* OCGA § 16-1-8 (a) (2) ("A prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former prosecution . . . [w]as terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts or after a plea of guilty was accepted by the court."). *But see Cliett v. State*, 167 Ga. 835, 837 (147 SE 35) (1929) ("Counsel for the defendant and the solicitor general 'agreed that a mistrial be declared,' but before counsel for defendant 'agreed,' the court had already announced, referring to the finding of the jury: 'This is not a verdict. I will have to declare a mistrial.' We do not think that counsel in face of the fact could have done otherwise than agree to a mistrial, and his agreement should not be treated as a voluntary agreement that a mistrial be declared. It was nothing more than an agreement to the court's pronounced opinion as to what was proper under the circumstances.").

of the United States in *United States v. Perez*,[10] which the Supreme Court of Georgia

has described as follows:

> The test to be applied by a trial court hearing a double jeopardy plea is
> that retrial is permissible only if a manifest necessity existed for the
> declaration of the mistrial lest otherwise the end of public justice be
> defeated; the existence of "manifest necessity" is to be determined by
> weighing the defendant's right to have his trial completed before the
> particular tribunal against the interest of the public in having fair trials
> designed to end in just judgments; and the decision must take into
> consideration all the surrounding circumstances.[11]

When there is no manifest necessity for "aborting a trial rather than using other less

drastic remedies to cure problems, in the absence of defendant's motion for a mistrial,

the granting of a mistrial is an abuse of discretion."[12] And on appeal, the standard of

review of a grant or denial of a plea in bar is "whether, after reviewing the trial

court's oral and written rulings as a whole, the trial court's findings support its

---

[10] 22 U.S. 579, 580 (6 LEd 165) (1824); *see also Jones v. State*, 232 Ga. 324, 327 (206 SE2d 481) (1974) ("The double jeopardy clause operates with respect to a proposed retrial of the defendant by examining the entry of the mistrial under the test of *United States v. Perez*." (citation omitted)).

[11] *Jones*, 232 Ga. at 327.

[12] *Haynes v. State*, 245 Ga. 817, 819 (268 SE2d 325) (1980).

6

conclusion."[13] However, as will soon become clear, we currently lack the ability to review the trial court's decision to declare a mistrial and, likewise, its denial of Devin's plea in bar.

In pertinent part, the record reflects that both Marcus and Devin requested that the jury be instructed on voluntary manslaughter as a lesser-included offense of malice murder and felony murder, and the jurors were so charged. Then, after retiring to deliberate and requesting and receiving reinstruction as to the various offenses at issue, the jurors inquired as to whether they could "apply voluntary manslaughter instead of felony murder." In response, the court reinstructed the jurors that should they find a defendant not guilty of malice murder or felony murder, they would be authorized to determine whether he was guilty of the lesser-included offense of voluntary manslaughter.

A while later, the jurors sent out a second note indicating that they "[could] not reach a unanimous decision on Count 2 for both defendants." Because the trial court

---

[13] *Frost v. State*, 328 Ga. App. 337, 339-40 (1) (761 SE2d 875) (2014) (punctuation omitted), *reversed on other grounds by* Case No. S14G1767 (decided June 15, 2015); *accord Wilson v. State*, 229 Ga. App. 455, 455 (494 SE2d 267) (1997); *see also State v. Goble*, 231 Ga. App. 697, 699 (500 SE2d 35) (1996) ("The appellate standard of review of a grant of a plea in bar of double jeopardy is whether the trial court's findings support its conclusion that the bar should be applied.").

7

and the attorneys were unclear as to what this note meant (*i.e.*, whether the jurors believed that they must reach the same verdict as to both defendants or whether they had reached a verdict as to one defendant but not the other), the court requested in writing that the jurors clarify their question. The jurors then asked, "[i]f we are unable to come to a unanimous decision on Count 2 for both defendants what are our options?" The court, still unclear as to the jury's exact issue, responded in writing as follows: "You have to make a decision as to each count 1 for (sic) each defendant independently. Have you reached a decision as to one defendant or are you undecided as to both?" The jurors responded that they were "not all in agreement on Count 2 for Devin Washington."

> The trial court then struggled with this response by the jury, pondering
>
> . . . [a]re they not in agreement as to the charge or as to the verdict? They are not in agreement. So are half [of] them going to voluntary [manslaughter] or other (sic) half going to felony murder or are they – I mean I don't know how to get them to answer that. I guess what we should say – but I mean we've got – I mean are they – if they are not in agreement as to the charge that's different than if they are not in agreement as to guilt or innocence.

Ultimately, the trial court decided to issue an *Allen* charge to the jury.[14] The court also decided to write back to the jurors, advising that they would "need to continue [their] deliberations."

Although the transcript gives no indication as to the timing, either concurrent with the aforementioned communication or after it, the trial court requested in writing that the jurors, "[w]ithout specifying which way [they] [were] leaning, . . . provide a count (number) as to each defendant and each count and what the split is." This handwritten sheet submitted to the jury by the trial court referred to the various charges only by count number, not by the name of the charged offense; and in response, the jurors indicated that they were unanimous as to every count for the defendants except "Count 2" for Devin Washington, on which they were split eleven to one.

After receiving the *Allen* charge and again retiring to deliberate, the jurors sent another communication to inform the trial court that they had "exhausted all attempts

---

[14] An *Allen* charge is given by the trial court when the jury in a criminal trial indicates that it is deadlocked, encouraging the jurors to reexamine their opinions in continued deliberations and to attempt to reach a unanimous verdict. *See Allen v. United States*, 164 U.S. 492 (17 SCt 154, 41 LEd 528) (1896). *See generally Humphreys v. State*, 287 Ga. 63, 79-82 (9) (694 SE2d 316) (2010); *Wells v. State*, 297 Ga. App. 153, 160-61 (2) (676 SE2d 821) (2009).

to come to a unanimous decision on Count 2 for Devin Washington." At that point, the following colloquy took place on the record:

THE COURT: All right. Thank you we are back in session and everybody can be seated. I'll ask the foreperson while we're waiting on the verdict form. It is my understanding, based on the communication that you have made to the Court, that a unanimous verdict [h]as been reached on all counts with the exception of count 2 as to Devin Washington; is that correct?

FOREPERSON: That's correct.

THE COURT: And that – to the – who is the foreperson? And based on your communication you have written that y'all are hopelessly deadlocked to that count as to Devin Washington. Is that correct?

FOREPERSON: Yes.

THE COURT: You do not believe that any further deliberations would result in resolution of that count?

FOREPERSON: We – nobody's budging.

THE COURT: All right. And so what I would need you to do – we are going to take the verdict on all other counts. As to the count on Devin Washington that will be handled separately as to count 2. But I

10

need for you to sign the verdict, make sure that's the verdict that y'all have agreed to for the other counts.

FOREPERSON: Yes. Do you need to know what exactly –

THE COURT: I'm going to ask for the verdict in just a second, but it has to be filled in and signed and dated by you as foreperson. And if y'all need to go – if y'all need to go back out and complete some paperwork, that's fine.

I need to ask you some questions. Madame foreperson, can you stand where you are. Have you reached a verdict?

FOREPERSON: We have.

THE COURT: Was it unanimous as to all of the counts other than the ones that you have told me –

FOREPERSON: We have.

THE COURT: – were deadlocked? Has the verdict form been filled in, signed, and dated by you.

FOREPERSON: It has.

THE COURT: Would you pass it to the bailiff, please.

THE CLERK: In the Superior Court of Richmond County in the case of the State of Georgia versus Marcus Washington and Devin Washington, indictment number 2012-RCCR-1600 for count 1, malice murder, we, the jury, find the defendant Marcus Washington not guilty. For count 1 malice murder, we, the jury, find the defendant Devin Washington, not guilty. For count 2, felony murder, we, the jury, find the defendant Marcus Washington not guilty. For count 3, possession of a firearm during the commission of a crime, we, the jury, find the defendant Marcus Antwan Washington guilty. For count 4, possession of a firearm during the commission of a crime, we, the jury, find the defendant Devin Washington guilty so found this 3rd day of May 2013, [(name of foreperson)], foreperson.

THE COURT: All right. Members of the jury I want to thank you for your service. This case has been tried exhaustively and you have heard and made a decision with regard to the evidence so your service is now concluded. I do need to ask do y'all wish to poll the jury as to counts 3 and 4?

Trial counsel for both Devin and Marcus declined to poll the jury on the verdict of guilt as to the possession-of-a-firearm counts.

Thereafter, the trial court gave the jurors final instructions as to their ability to now speak about the case and then discharged them from service. After all jurors had exited the courtroom, the trial court entered a mistrial as follows:

THE COURT: And for purposes of the record, based on the jury's inability to reach a verdict, I will declare a mistrial as to count 2 of the indictment as to Devin Washington.

There was no objection, and the proceedings concluded not long after this declaration was made by the court.

Several weeks later, after learning that the court was calling Devin for retrial on the felony-murder charge, his defense counsel filed a motion to bar the subsequent prosecution on grounds that the jury had found him not guilty on the felony-murder count and had only been unable to reach a unanimous verdict as to the lesser-included offense of voluntary manslaughter. In support of this contention, Devin pointed to the verdict form, which is included in the appellate record and shows that the jury foreperson wrote beside Count 2, felony murder as to Devin Washington, that the jury found him "not guilty." But below that line, the jury foreperson also wrote "voluntary manslaughter ?" A line is drawn through these handwritten words and, beside them, "mistrial declared" is written in what appears to be different handwriting, along with the initials SBJ.[15] Devin attached as exhibits a copy of the verdict form and affidavits from three jurors, including the foreperson, who averred that the jury had been

---

[15] We note that the case was tried by Judge Sheryl B. Jolly.

unanimous as to a not-guilty verdict on felony murder for Devin, but had been hung as to the lesser-included offense of voluntary manslaughter, and that no juror had struck through any words on the form or written "mistrial declared."

At a hearing on this motion, Devin's trial counsel suggested that he had not seen a copy of the verdict form until researching issues after trial and that the defense had been unaware that the jurors wrote "not guilty" as to the felony-murder count because the verdict form was never read aloud as written.[16] Specifically, counsel said,

> Your honor, this particular case we were in the process of actually checking – because of the conversation about them being hung up on voluntary manslaughter, we were checking to if (sic) we could file a double jeopardy motion and I went over to the courthouse and I found a copy of the verdict in the case.
>
> When I found the copy of the verdict in the case it was clear on the verdict that the jury had wrote (sic) for count 2, felony murder, ["]we, the jury, find the defendant, Devin Washington, not guilty,["] and that it had written voluntary manslaughter with a question mark underneath that. And if that being the case it then appeared that it had been struck through, the not guilty verdict, and that a mistrial had been

---

[16] *See Rank v. Rank*, 287 Ga. 147, 149 (2) (695 SE2d 13) (2010) ("Attorneys are officers of the court, and their statements in their place, if not objected to, serve the same function as evidence." (punctuation omitted)).

14

written next to it and voluntary manslaughter with the question mark had been struck through as well.

. . .

Because of the earlier conversation I can understand after reviewing some of the record what [the] confusion was. The jurors had asked earlier in the case if they could consider the voluntary manslaughter for the felony murder count. I'm sure they were told they could. And then – so they were asked about are they hung up on count 2 and they were hung up, but they were hung up on voluntary manslaughter. And . . . they told they were hung up on count 2 and what they were referring to was the voluntary manslaughter because they had asked the question earlier and so when the clerk announced the – the verdict as to felony murder it was never read into the record that they had – the jury verdict at the time read not guilty of felony murder. Then when the jury – when the jury verdict should have been read if it was read as written it would have said for count 2, felony murder, ["]we, the jury, find the defendant, Devin Washington, not guilty.["] And then – and then the Court, I think, announced a mistrial on that count.

Defense counsel then sought to present testimony by the clerk of court to purportedly testify that the trial judge had seen the verdict form prior to instructing her that Count 2 as to Devin should not be read into the record. Under these particular circumstances, trial counsel argued that it was inappropriate for the court to strike

15

through the juror's handwritten words and declare a mistrial without first holding a hearing on the verdict form. Counsel also asked to call the jury foreperson and another juror, who he said had appeared voluntarily and were not under subpoena, to testify, but the State objected.

The State not only objected to former-juror testimony on the grounds of irrelevance to the verdict that was published in open court, but also because any contact with the jurors would have been in violation of a court order. The record reflects that on May 15, 2013 (not long after the jury rendered its verdict on May 3, 2013), the trial court filed an order "to seal all information regarding the identities of trial jurors" in the case against Marcus and Devin. The court then issued an order that same day sealing the contents of an envelope that contained the juror-information cards.

The trial court refused to allow *any* witness testimony or to allow a proffer as to what testimony Devin expected his witnesses to give, concluding that Devin's arguments presented purely legal issues.[17] And both the court and State agreed that, even if all twelve former jurors were brought into court and testified the same way

---

[17] The trial court chastised Devin's counsel for what it viewed as the contemptible action of not seeking to unseal the record.

(*i.e.*, that they had found Devin not guilty as to felony murder but were deadlocked as to the lesser-included offense of manslaughter), their testimony would be irrelevant to the verdict as it had been published in court. Ultimately, the court denied Devin's motion, and this appeal follows.

To begin with, Devin does not contend that the trial court erred by disallowing the testimony or affidavits of jurors, but we nevertheless note that a juror may testify as to "whether there was a mistake in entering the verdict onto the verdict form."[18] And prior to the enactment of Georgia's new Evidence Code, there existed a codification of the common law that permitted jurors to give testimony sustaining,

---

[18] OCGA § 24-6-606 (b); *see also Perryman v. Rosenbaum*, 205 Ga. App. 784, 786-87 (3) (423 SE2d 673) (1992) ("[W]e recognize that the necessity for protection of jurors from harassment or other unlawful inducement, the need for certainty of verdicts, the need to foster open jury discussion, and the need to insulate jury value judgments from judicial review, will be compelled to yield in certain very limited occasions where human life or liberty sways in the balance."); *Setzer v. Latimer*, 40 Ga. App. 247, 249 (149 SE 281) (1929) ("The general rule that the statements of jurors will not be received . . . to impeach their verdict does not prevent the reception of their evidence as to what really was the verdict agreed upon, in order to prove that, through mistake or otherwise, it has not been correctly expressed, as the agreement reached by the jury, and not the written paper filed, is the verdict, and a showing that the writing is incorrect is not an impeachment of the verdict itself." (punctuation omitted)).

though not impeaching, the verdict that they reached.[19] We make no pronouncement today as to whether the common law in this regard has been displaced by the new Evidence Code.[20]

Second, as discussed *supra*, the retrial of a criminal defendant after a mistrial caused by the inability of the jury to reach a verdict does not "constitute double jeopardy [when] there is a manifest necessity for declaring the mistrial."[21] Indeed,

---

[19] *See* former OCGA § 17-9-41 ("The affidavits of jurors may be taken to sustain but not to impeach their verdict."); *Fulton County v. Phillips*, 91 Ga. 65, 65 (16 SE 260) (1892) (syllabus by the court) ("According to repeated rulings of this court, the affidavits of jurors may be taken to sustain, but not to impeach, their verdict."); *see also* former OCGA § 9-10-9 (providing the same rule in civil procedure).

[20] *See generally* OCGA § 24-1-2 (e) ("Except as modified by statute, the common law as expounded by Georgia courts shall continue to be applied to the admission and exclusion of evidence and to procedures at trial."); *Oliver v. State*, 329 Ga. App. 377, 381 (765 SE2d 606) (2014) (declining to "construe OCGA §§ 24-4-404 and 24-4-405 as a modification of Georgia's long-standing requirement that a defendant must first make a prima facie showing of self-defense before requiring a trial court to determine whether evidence pertaining to the victim's character is admissible"); JOHN D. HADDEN, GEORGIA LAW OF EVIDENCE § 1.1 ("[E]ven where the federal rules are now the exclusive source of evidence law, room remains for Georgia courts to continue long-standing practices that are not affected by the rules, or that leave open room for judicial interpretation. Indeed, for any given common law approach, a potential question exists as to how specifically it must conflict with the revised rules to avoid being overruled.").

[21] *Leonard v. State*, 275 Ga. App. 667, 668 (621 SE2d 599) (2005) (punctuation omitted); *accord Bailey v. State*, 261 Ga. App. 291, 292 (2) (582 SE2d 487) (2003).

18

when a jury is "hopelessly deadlocked, this constitutes manifest necessity for declaring a mistrial."[22] And the determination of whether the jury is in fact hopelessly deadlocked is "a matter somewhat in the discretion of the trial court."[23]

But here, Devin takes issue with the trial court's declaration of a mistrial as to Count 2 of the indictment, felony murder, when, despite communications with the jury that indicated a deadlock as to Count 2 in *general*, the verdict form signed by the foreperson appears to show an acquittal for felony murder but indecision as to the lesser-included offense of voluntary manslaughter. Nevertheless, the record reflects that the clerk of court was instructed to skip Count 2 as to Devin when reading the verdict aloud and, after the jury was discharged, the court officially declared a mistrial as to that count. It is this sequence of events that gives rise to Devin's contention that the trial court should not have declared a mistrial as to Count 2 and that, accordingly, the trial court erred in denying his plea in bar when any subsequent prosecution for felony murder is barred by double jeopardy (because the verdict read

---

[22] *Leonard*, 275 Ga. App. at 668 (punctuation omitted); *accord Bailey*, 261 Ga. App. at 292 (2).

[23] *Leonard*, 275 Ga. App. at 668-69 (punctuation omitted); *accord Bailey*, 261 Ga. App. at 292 (2).

19

into the record in open court did not match the verdict as recorded in writing by the jury foreperson).

Our Supreme Court has explained that the meaning of the word "verdict" is a "true saying."[24] And in Georgia, verdicts acquire their legality from return and publication.[25] Indeed, a verdict is only published when it is agreed upon by the jury, written out, signed by the jury foreperson, and delivered to the clerk, by the direction and in the presence of the judge.[26] Thus, consistent with its definition of "verdict,"

---

[24] *Groves v. State*, 162 Ga. 161, 162 (132 SE 769) (1926) (punctuation omitted).

[25] *See Easley v. State*, 262 Ga. App. 144, 149 (2) (584 SE2d 629) (2003) ("Since verdicts acquire their legality from return and publication, there was no verdict in this case until it was received and published in open court." (citations and punctuation omitted)); *Irvine v. Grant*, 15 Ga. App. 269, 269 (1914) ("A verdict is not a verdict in law until received and published in open court."); *see also* OCGA § 17-9-21 ("Verdicts shall be received only in open court, in the absence of agreement of the parties.").

[26] *See Merchants' Bank of Macon v. Rawls*, 7 Ga. 191, 200 (4) (1849) ("The rule on this subject is more one of expediency than of principle. We believe that the ends of justice, and equality of right and privilege between parties, will be best promoted by the following rule, to wit: *a party shall not dismiss or be nonsuit in any case, after the publication of the verdict, and it shall be considered as published, eo instanti, in which it is handed to the plaintiff's counsel or other person directed by the Court to receive it.*"); *Wellstar Health Sys., Inc. v. Sutton*, 318 Ga. App. 802, 804 (2) (734 SE2d 764) (2012) ("Where a jury agrees on their verdict, write it out, have it signed by their foreman, and deliver it to the clerk, by the direction and in the presence of the judge, it is published." (punctuation omitted)); *Bell v. State*, 163 Ga.

20

our Supreme Court has cautioned that "[a] verdict declaring contrary to the findings of the jury is not a true verdict"[27] and that to hold otherwise would be "to treat a solemn legal investigation as a game, where victory may be won by inadvertence and methods that are worse."[28]

In the case *sub judice*, Devin essentially contends that what was entered into the record was not the jury's true verdict because the verdict form portends to reflect a decision that is contrary to what was read into the record by the clerk of court, at the

---

App. 672, 674 (1) (295 SE2d 147) (1982) (same); *Irvine*, 15 Ga. App. at 269 (same); *see also Hannula v. Ramey*, 177 Ga. App. 512, 513 (1) (339 SE2d 735) (1986) ("When a verdict has been received by the clerk of the court, and read at the direction of the judge, it has been published."); *Haughton v. Judsen*, 116 Ga. App. 308, 311 (2) (157 SE2d 297) (1967) ("The record indicates that when the jury had reached a consensus and returned to the box the judge inquired of them whether they had reached verdicts in the cases; one of them replied that they had and the judge then directed the clerk to receive and publish the verdicts. Thereupon the clerk took the petitions on which the verdicts had been written and read the verdicts in open court. This constitutes a publication.").

[27]*Groves*, 162 Ga. at 162.

[28] *Id.*

trial court's direction, before the trial court declared a mistrial[29]—a contention and factual scenario that appear to be novel in our case law.

In seeking to review Devin's claim, we are mindful that a "defendant is entitled to the benefit of the doubt in the construction of an ambiguous verdict,"[30] and that a

[29] *Cf. Blueford v. Arkansas*, __ U.S. __, __ (II) (A) (132 SCt 2044, 182 LE2d 937) (2012) (holding that, despite foreperson's earlier representations to the court that the jury was unanimous on acquittals for capital and first-degree murder but hung as to lesser charges, defendant was not entitled to double jeopardy because upon returning from further deliberations, "the foreperson stated only that they were unable to reach a verdict" and "gave no indication whether it was still the case that all 12 jurors believed [the defendant] not guilty of capital and first-degree murder, that 9 of them believed he was guilty of manslaughter, or that a vote had not been taken on negligent homicide"; and noting that "it was therefore possible for [the defendant's] jury to revisit the offenses of capital and first-degree murder, notwithstanding its earlier votes" and, thus, "the foreperson's report prior to the end of deliberations lacked the finality necessary to amount to an acquittal on those offenses, quite apart from any requirement that a formal verdict be returned or judgment entered"); *State v. Lane*, 218 Ga. App. 126, 126-27 (460 SE2d 550) (1995) (holding that trial court erred in granting plea in bar as to murder when, prior to receipt and publication of fact that jury "could not reach a verdict" on murder count, jury had indicated in *notes* to the trial court that it had acquitted defendant of murder, and holding that "there was no verdict until it was received and published in open court").

[30] *Lindsey v. State*, 262 Ga. 665, 666 (1) (424 SE2d 616) (1993); *see Maltbie v. State*, 139 Ga. App. 342, 344 (2) (228 SE2d 368) (1976) (holding that jury's original verdict of "guilty without intent and recommend mercy" was an acquittal such that, after it "was presented to an officer of the court and the court, the trial had ended . . . [and] [t]he trial court was without authority to return the jury to its room for any further action"); *Ezzard v. State*, 11 Ga. App. 30, 30 (1) (74 SE 551) (1912) (holding that verdict reading that "We, the jury, find the defendant guilty of uttering and publishing said deed. We further recommend to treat as a misdemeanor," was an

22

trial court has a duty to "insist on a legal verdict, that is, a verdict responsive to the issues as framed by the indictment or accusation and the evidence, and specified in the trial court's charge to the jury."[31] Thus, the trial court has a duty not only to tell the jury what the law is, but to "insist that they apply it and either render a verdict on some issue submitted or else make a mistrial."[32] In this regard, our Supreme Court has instructed that "the proper procedure is for the trial court and counsel to review the verdict prior to its publication in open court,"[33] and, when an improper verdict is rendered, the court should return the jury for further deliberations.[34]

---

acquittal).

[31] *State v. Freeman*, 264 Ga. 276, 278 (444 SE2d 80) (1994); *accord Brooks v. State*, 311 Ga. App. 857, 860 (2) (717 SE2d 490) (2011).

[32] *Brooks*, 311 Ga. App. at 860 (2) (punctuation omitted); *accord Freeman*, 264 Ga. at 277; *see also Kimmel v. State*, 261 Ga. 332, 334 (2) (404 SE2d 436) (1991) (holding that trial court did not err in declining to accept jury's first verdict when form stated that the jury "[found] the defendant undecided," and trial court's interpretation of "the verdict form to mean that the jury was either not unanimous or had not decided yet whether defendant was guilty or not guilty" was reasonable, and thus, trial court properly instructed jury to continue deliberating).

[33] *Freeman*, 264 Ga. at 278; *accord Newsome v. State*, 323 Ga. App. 15, 17 (2) (747 SE2d 99) (2013).

[34] *Freeman*, 264 Ga. at 278; *see Wade v. State*, 261 Ga. 105, 107-08 (6) (401 SE2d 701) (1991) (holding that, upon objection to the form of the verdict, trial court did not err in returning jury for further deliberations); *see also Ingram v. State*, 290 Ga. 500, 503 (2) (722 SE2d 714) (2012) ("Appellant seizes on the fact that we stated

23

But taking all of the foregoing into consideration, it is impossible to review for error the trial court's denial of Devin's plea in bar because the state of the record prohibits us from determining whether the trial court abused its discretion in declaring a mistrial. Indeed, we are unable to determine whether double jeopardy bars a subsequent prosecution for felony murder because we cannot discern from the appellate record at what point the trial judge saw the verdict form. Thus, we cannot determine whether the trial judge saw the form before or after deciding to declare a mistrial.[35] Likewise, we cannot discern whether, if the judge saw the form *after* the

that both the trial court and counsel should review the verdict prior to its publication to contend that the trial court in this case committed reversible error by not reviewing the verdict with counsel prior to returning the jury for further deliberations. Assuming that the trial court should have shown the first verdict to counsel, this assumed error does not demand a reversal as ultimately the defense has no right to insist that the court accept a return of ambiguous verdicts or to insist on a particular instruction. Consequently, Appellant has failed to show that he has sustained any legal prejudice because the trial court at all times had the discretion to return the jury to the jury room for additional deliberations to clarify their verdict." (citations omitted)).

[35] *See Frost*, 328 Ga. App. at 341 (1) (holding that trial court erred in insisting upon a mistrial as to all counts when jury had indicated that it was only hung as to one count, and noting that the trial court erred because it "could easily have followed the less drastic alternative of accepting the jury's verdict on the decided counts and declaring a mistrial only on the undecided count," such that there was no manifest necessity to grant a mistrial (punctuation omitted)), *reversed on other grounds by* Case No. S14G1767 (decided June 15, 2015); *see also Haynes*, 245 Ga. at 819 (holding that when there was "no manifest necessity for aborting a trial rather than using other less drastic remedies to cure problems, in the absence of defendant's

verdict was read into the record, it was before or after the jury had dispersed.[36]

_____

motion for a mistrial, the granting of a mistrial is an abuse of discretion"); *Kimmel*, 261 Ga. at 334 (2) (holding that trial court did not err in declining to accept jury's first verdict when form stated that the jury "[found] the defendant undecided," and trial court's interpretation of "the verdict form to mean that the jury was either not unanimous or had not decided yet whether defendant was guilty or not guilty" was reasonable, and thus, trial court properly instructed jury to continue deliberating).

[36] *See* OCGA § 17-9-40 ("A verdict may be amended in mere matter of form after the jury have dispersed; but, after it has been received, recorded, and the jury dispersed, it may not be amended in matter of substance, either by what the jurors say they intended to find or otherwise."); *Groves*, 162 Ga. at 166 ("There must be the unanimous assent of the entire twelve jurors before there is a legal verdict. When it develops that such is not the fact, there is no verdict. If the jury has not been dispersed, they should be sent to the jury room, with the direction to consider the case for the purpose of reaching an agreement on a verdict."); *Handley v. McKee*, 8 Ga. App. 570, 573 (3) (70 SE 94) (1911) (holding that, after court dismissed case at plaintiff's request, notwithstanding the fact that jury had deliberated upon the case and indicated that it had reached a verdict, "there was no case pending in court on which a verdict could be predicated" and the "information which [the judge] got from an inspection of the petition handed to him by the foreman of the jury was information which he received as an individual, and not as a judge of the court"; and further holding that, despite violation of defendant's right to receive the verdict that was purportedly reached, the "writing incorporated in the bill of exceptions as a verdict of the jury was in law no verdict, because it was not received in court and published as required by law" and was instead "entirely extraneous and extrajudicial"); *see also Ballard v. Turner*, 147 Ga. App. 584, 586 (3) (249 SE2d 637) (1978) ("[When] the verdict was erroneous on its face, [it was] not error to determine from the jury before its dispersal what its true intent had been, to give correct instructions on how the various verdicts might be framed under the evidence, and to return them to the jury room to correct the error."); *McGahee v. Samuels*, 61 Ga. App. 773, 773 (7 SE2d 611) (1940); *Brown v. State*, 35 Ga. App. 660, 660 (134 SE 193) (1926).

25

Additionally, although it appears by the handwritten initials that it was the trial judge who marked through the words written by the jury foreperson on the verdict form as to Count 2, and the State appears to concede this fact in its brief, this too is not entirely clear from the record. Thus, we have no choice but to remand this case to the trial court for another hearing on these issues,[37] which will need to be conducted by a judge other than the one who presided over the trial.[38]

Judge McFadden is untroubled by these unanswered questions, declaring first that we may presume that the trial court "followed the law" with regard to "viewing a jury verdict" because there "is nothing in the record to rebut the presumption that the trial judge reviewed the verdict before allowing the clerk to read it aloud in open court." While he may very well be correct that this is what occurred, the trouble—and danger—in this presumption is that it logically leads to another presumption: that the

_____

[37] *See State v. D'Auria*, 222 Ga. App. 615, 616 (475 SE2d 678) (1996) (remanding for further proceedings when State argued that trial court erred in granting defendant's plea in bar for double jeopardy based on allegations of intentional prosecutorial misconduct but trial court failed to address whether or not State had intended to cause a retrial and to subvert defendant's protections under the Double Jeopardy Clause).

[38] *See Lewis v. State*, 275 Ga. 194, 195 (1) (565 SE2d 437) (2002) (holding that "[i]t is elementary that one may not be a witness and a judge in the same proceeding," and remanding for a new hearing with a different judge (punctuation omitted)).

trial court saw the words "not guilty" and, notwithstanding its prior communications with the jury indicating *deadlock*, elected to flat out ignore those words. In other words, if we presume that the trial court followed the law that required the court to review the verdict prior to publication, we must likewise presume that the trial court then elected *not* to follow the law that would have required the court to have the jury clarify its intent in light of the court's prior communications with the jury.[39] Needless to say, with a record as murky as that in the case *sub judice*, making presumptions on factual scenarios with such serious legal implications is imprudent.

Judge McFadden continues, noting that, "even if we could not make such a presumption, the timing of the trial court's viewing of the verdict form" does not matter because there was no manifest necessity to declare a mistrial. But if the trial court did not see the written verdict form prior to its publication and the jury's dispersal, then the trial court's only clue as to the jury's decision with regard to Count 2 was that the jury *had* no decision on Count 2 because the foreperson had communicated to it that the jury could not reach a decision as to that count.

Finally, Judge McFadden dismisses our concern with determining the exact moment of publication. Although Judge McFadden, like the majority, correctly notes

---

[39] *See supra* notes 30-34 and accompanying text.

the law that a verdict is published when it is agreed upon by the jury, written out, signed by the jury foreperson, and delivered to the clerk, by the direction and in the presence of the judge, he nevertheless appears to conclude that publication occurred in this case at the instant when the verdict form was delivered "to the bailiff and then the clerk at the direction and in the presence of the judge." But the problem with this conclusion is that it ignores case law by this Court,[40] and by our Supreme Court,[41] that

[40] *See Hannula*, 177 Ga. App. at 513 (1) ("When a verdict has been received by the clerk of the court, and read at the direction of the judge, it has been published."); *Haughton*, 116 Ga. App. at 311 (2) ("Thereupon the clerk took the petitions on which the verdicts had been written and read the verdicts in open court. This constitutes a publication.").

[41] *See Arkwright v. State*, 223 Ga. 768, 771 (4) (158 SE2d 370) (1967) ("It is asserted that the court erred in permitting the jury to disperse after returning its verdict and *before the verdict was read and published.*" (emphasis supplied)); *Morris v. State*, 177 Ga. 365, 369 (5) (170 SE 217) (1933) ("[T]he verdict was again *read and published* by the solicitor general in the presence of the defendant." (emphasis supplied)); *Johnson v. State*, 154 Ga. 529, 530 (114 SE 713) (1922) ("[I]n the presence of the court and jury, *the court then ordered the verdict published, and the same was read by the clerk* in the presence of movant, the defendant." (emphasis supplied)); *Livingston v. Taylor*, 132 Ga. 1,7 (6) (63 SE 694) (1909) ("This verdict was received without objection . . . . This verdict *was duly read and published in the presence of the jury and the court, and no other verdict of the jury was read and published.*" (emphasis supplied)). *Compare Hugley v. Holstein*, 34 Ga. 572 (1866) (holding that verdict returned by jury should have been received and recorded and that trial court erred by granting a continuance after jury returned its verdict; applying the principle announced in *Merchants' Bank of Macon v. Rawls*, 7 Ga. 191, 200 (4) (1849), that a verdict "shall be considered as published *eo instanti* in which it is handed to the plaintiff's counsel, or other person directed by the Court to receive it"

28

suggest the form must not only be delivered but *read* to constitute publication.[42]

Indeed, Judge McFadden recently published an opinion, cited by the majority *supra*,[43] which reiterates this proposition and which relies upon prior authority from this Court.[44]

Given the significant gaps in the record before us, as well as the potentially conflicting areas of case law that might or might not apply depending upon the answers to the questions we propound above, this case is remanded for proceedings consistent with this opinion.

---

(emphasis omitted)), *with Johnson*, 154 Ga. at 530 ("The *indictment bearing the verdict was delivered to the clerk, but before it was published or made known or read by the clerk* the court discovered that the defendant was in the prisoner's room opening upon the courtroom, and ordered that he be brought inside the bar of the court." (emphasis supplied)).

[42] *See supra* notes 40-41.

[43] *See supra* note 26.

[44] *See Wellstar Health Sys.*, 318 Ga. App. at 766-67 (2) (McFadden, J.) (citing to *Haughton v. Judsen*, 116 Ga. App. 308, 311 (2) (157 SE2d 297) (1967), and noting, parenthetically, that "verdict published when it is received by clerk of court and, at direction of the judge, is read in open court") ("In this case, no verdict was received or published in open court. Although the jury sent a note to the judge indicating some unspecified decision as to WellStar, the jury did not write out a verdict, have it signed by the foreman, deliver it to the clerk, or have it read in open court.").

2. In addition to arguing that double jeopardy bars a subsequent prosecution for felony murder, Devin also contends that the State is collaterally estopped from prosecuting him a second time for voluntary manslaughter, that the trial court erred in allowing evidence of prior bad acts between Marcus and himself, and that the trial court erred in failing to grant his motion to sever his trial from that of Marcus. But given our decision to remand in Division 1, we decline to address these contentions at this time because the enumeration as to voluntary manslaughter is contingent upon

the double-jeopardy claim,[45] and because judicial economy is best served by addressing at one time any other arguments that could result in a new trial.[46]

*Case remanded for further proceedings. Ray, J., concurs. Ellington, P. J., and McMillian, J., concur in judgment only. Barnes, P. J., Phipps, P. J., and McFadden, J., dissent.*

---

[45] *Compare Roesser v. State*, 294 Ga. 295, 295-301 (751 SE2d 297) (2013) (examining the evidence, closing arguments, jury charge, and "other relevant matters" to determine that when the jury acquitted defendant of malice murder, felony murder, and aggravated assault, it "necessarily determined that he acted in self-defense when he shot and killed" the victim, which was an "issue of ultimate fact" that "constitute[d] a critical element of voluntary manslaughter" such that collateral estoppel/double jeopardy barred the State from prosecuting the defendant again for voluntary manslaughter), *with State v. Williams*, 322 Ga. App. 341, 343-44 (744 SE2d 883) (2013) (addressing appeal after remittitur and holding that, despite actual acquittal for malice murder and implicit acquittal for felony murder in prior trial, re-prosecution for lesser-included offense of voluntary manslaughter was not barred by double jeopardy), *relying upon Williams v. State*, 288 Ga. 7, 11 (2) n.4 (700 SE2d 564) (2010) ("The State, of course, remains free to retry [the appellant] on the voluntary manslaughter charge inasmuch as her jeopardy for that charge did not end.").

[46] *See McRae v. Hogan*, 317 Ga. App. 813, 820 (3) (b) n.11 (732 SE2d 853) (2012) (declining to address, for purposes of judicial economy, enumeration dependent upon interrelated matters in light of remand for further proceedings); *Cosby v. Lewis*, 308 Ga. App. 668, 673 (3) (708 SE2d 585) (2011) (declining to address other enumerations of error in light of remand for further proceedings). *Cf. Dingler v. State*, 281 Ga. App. 721, 723 (1) (637 SE2d 120) (2006) (granting new trial on first enumeration of error but addressing additional enumerations which remained in issue and could be an issue upon retrial of the case).

A15A0277. WASHINGTON v. THE STATE.

BARNES, Presiding Judge, dissenting.

While I agree with most of the analysis and the result reached in Judge McFadden's dissent, I write only to emphasize that "it is not generally within the trial court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts. [Cit.]" *Dumas v. State*, 266 Ga. 797, 799 (2) (471 SE2d 508) (1996). The jury verdict form in this case makes it clear that the jury determined that Washington was not guilty of felony murder. Moreover, even if the verdict could be construed as ambiguous, a "defendant is entitled to the benefit of the doubt in the construction of an ambiguous verdict ([cit.]) . …" *Lindsey v. State*, 262 Ga. 665, 666 (1) (424 SE2d 616) (1993).

A15A0277. WASHINGTON v. THE STATE.

McFADDEN, Judge, dissenting.

If any text is due to be given its fair meaning, if any words require judges to confine themselves to objective meaning and refrain from searching for a more palatable subjective intent it is these: Not Guilty. The jury wrote those words, but the trial court disregarded them. We must reverse. We must direct the trial court to enter a judgment on that verdict of not guilty. I therefore respectfully dissent from the majority decision to remand the case to the trial court for further proceedings. I would remand only for retrial on the lesser included offense of voluntary manslaughter, on which the jury did hang.

The basis for the majority's decision is that we cannot discern from the record when the trial judge saw the verdict form and that we therefore cannot determine if

the trial court erred in denying the subsequent plea in bar. But the law required the trial court to review the verdict form before the clerk read it aloud. And we must presume that the trial court followed the law.

Moreover, even if we assume that the trial court erroneously failed to review the verdict form, such error would not alter the essential fact: the jury acquitted Washington of felony murder. The trial court's subsequent declaration of a mistrial on that charge was a nullity. So the plea in bar was due to be granted.

The acquittal on felony murder does not, however, bar retrial of Washington on the lesser included offense of voluntary manslaughter. Accordingly, I would affirm the denial of a plea in bar as to voluntary manslaughter and reverse the denial of the plea in bar as to felony murder.

1. *Felony murder.*

In the absence of a showing to the contrary, the trial court is presumed to have followed the law. *Lee v. State*, 324 Ga. App. 28, 31 (1) (749 SE2d 32) (2013). With regard to viewing a jury verdict, the proper procedure is for the trial court and counsel to review the verdict prior to its publication in open court. *State v. Freeman*, 264 Ga. 276, 278 (444 SE2d 80) (1994). See also *Ingram v. State*, 290 Ga. 500, 503 (2) (722 SE2d 714) (2012) (trial court and counsel should review verdict before publication).

2

There is nothing in the record to rebut the presumption that the trial judge reviewed the verdict before allowing the clerk to read it aloud in open court.

It is true that the record leaves some questions unanswered. We can confidently infer that the trial court failed to have counsel review the verdict. But the trial court – who, regrettably, took offense at the contention that she had erred in dealing with this unusual situation – declined to allow appellant's counsel to clarify the record as to the trial court's own review of the verdict. At the plea in bar hearing, Washington's counsel stated that the trial court had in fact looked at the verdict and instructed that "part of the verdict not be read." The trial court asked counsel to support that statement with the trial transcript, and counsel responded that he had a witness and subsequently offered to present testimony from the clerk of court to explain why the not guilty verdict on felony murder was not read aloud in court. The trial court, however, refused to allow the clerk to testify or to allow counsel to make any offer of proof. We note that "[W]here offer of proof is necessary, it is error for the trial court to refuse an opportunity to counsel to state what he proposes to prove by the evidence offered." *Castell v. State*, 252 Ga. 418, 419 (2) (314 SE2d 210) (1984). But regardless of any error in refusing the proffer of evidence, there still is nothing in the record to indicate that the trial court did not discharge her legal duty to review the

3

verdict before directing the clerk to read it. So the majority's concern about when the judge actually saw the verdict is misplaced: in the absence of evidence to the contrary, we must presume that the trial court followed the law and reviewed the verdict form before the clerk read it aloud in open court.

The majority refuses to make this mandated legal presumption because it reasons that then "we must likewise presume that the trial court then elected *not* to follow the law that would have required the court to have the jury clarify its intent in light of the court's prior communications with the jury" (Emphasis in original; footnote omitted). Again, the majority's concern is misplaced because, contrary to its rationale, there was nothing to be clarified by the jury; it's verdict was clear and unambiguous in finding Washington not guilty of felony murder, while being deadlocked as to the lesser included offense of voluntary manslaughter.

More fundamentally, even if we were not mandated by the record before us to presume that the trial court followed the law and reviewed the verdict, the timing of the trial court's viewing of the verdict form does not alter the controlling plea in bar analysis. "[J]eopardy attached when the jury was seated and sworn and . . . [Washington] was entitled to receive any verdict reached by that jury. Further, unless manifest necessity existed for granting a mistrial as to the counts decided by the jury,

4

double jeopardy bars any retrial on those counts." *Bair v. State*, 250 Ga. App. 226 (551 SE2d 84) (2001) (citations and punctuation omitted). Here, manifest necessity did not exist for granting a mistrial as to felony murder because the jury actually acquitted Washington of that offense.

The majority's concern about pinpointing the moment of publication is similarly misplaced. The controlling law is long settled. "A verdict is not a verdict in law until received and published in open court. Where a jury agree on their verdict, write it out, have it signed by their foreman, and deliver it to the clerk, by the direction and in the presence of the judge, it is published." *Bell v. State*, 163 Ga. App. 672, 674 (295 SE2d 147) (1982) (citations and punctuation omitted). Accord *Merchants' Bank of Macon v. Rawls*, 7 Ga. 191, 200 (1849) (verdict considered published when it is handed to person directed by the court to receive it). In this case, the record shows that the jury returned its written verdict finding Washington not guilty of felony murder, had it signed by the foreperson, and delivered it to the bailiff and then the clerk at the direction and in the presence of the judge. Because the verdict was received and published in open court, it was a final verdict in law; and "once the jury reached its verdict in this case, and the same was presented to an

5

officer of the court and the court, the trial had ended." *Maltbie v. State*, 139 Ga. App. 342, 345 (2) (228 SE2d 368) (1976).

The majority mistakenly asserts that there is conflicting case law as to when a verdict is published, suggesting that it is incorrect to conclude that the jury here published its verdict when it delivered the verdict to the bailiff at the direction and in the presence of the judge. The word "publish" simply means "to make public." *Black's Law Dictionary*, Revised Fourth Edition. Our case law uses the word "publish" in two different, but not conflicting, ways. Some cases speak of a jury publishing its verdict by delivering it to the court. Others speak of the court publishing the jury's verdict by having it read aloud by the clerk. The cases cited above, and which control our plea in bar analysis, refer to the jury publishing its verdict by delivering it to the court. *Bell*, supra; *Merchant's Bank*, supra. See also *Disby v. State*, 238 Ga. 178, 179 (3) (231 SE2d 763) (1977) (discussing court letting "the jury publish its verdict" as to one count and finish its deliberations as to other count the next day). The cases cited by the majority refer not to the jury publishing its verdict, but to the publication of the verdict that occurs when it is subsequently read aloud by the clerk. See, e.g., *Hannula v Ramey*, 177 Ga. App. 512, 513 (1) (339 SE2d 735) (1986). While the use of the word "publish" to describe both the jury's

delivery of its verdict to the court and the clerk's reading aloud of that verdict may be confusing, it does not amount to a conflict in the law.

For purposes or our plea in bar analysis, the pertinent publication of the verdict, as discussed above, was the jury delivering its final, legal verdict to the court. It follows that the failure of the clerk to read aloud the portion of the final verdict finding Washington not guilty of felony murder, the trial court's declaration of a mistrial as to that offense of which Washington had been acquitted, and the drawing of a line through the not guilty verdict on the verdict form were of no consequence. The trial court of course had the duty to insist on a legal verdict and could have rejected an ambiguous verdict. *Ingram*, supra. But because the verdict here was legal and contained no ambiguity, "[t]he trial court [and its clerk were] without authority to [ignore or alter the jury's final verdict] . . . . [A]ll actions occurring subsequent to the return of the jury's original verdict were nugatory[.]" *Douglas v. State*, 206 Ga. App. 740, 742 (1) (426 SE2d 628) (1992). See also *State v. Telenko*, 225 Ga. App. 724, 726 (484 SE2d 725) (1997) (after trial had ended, court's subsequent declaration of a mistrial was a "mere nullity").

Moreover, "where the verdict was . . . one of acquittal, this court [has] found that a new trial was precluded under the former jeopardy provisions of the bill of

rights." *Douglas*, supra (citation and punctuation omitted). Thus, in the instant case, because the verdict was one of acquittal for felony murder, a new trial is precluded and the plea in bar was erroneously denied.

> [W]hen a defendant has been acquitted, he can not lawfully be again tried for the same offense. It necessarily follows that [Washington] cannot lawfully be retried for the same [felony murder] offense, the trial court having no authority to grant a mistrial as to proceedings that have previously terminated in a jury verdict of acquittal as to that offense. [Washington's] plea of former jeopardy [should have been] sustained.

*State v. Jorgensen*, 181 Ga. App. 502, 503 (353 SE2d 9) (1987) (citations and punctuation omitted).

2. *Lesser included offense of voluntary manslaughter.*

Washington can be retried on the lesser included offense of voluntary manslaughter. He argues collateral estoppel, citing *Roesser v. State*, 294 Ga. 295 (751 SE2d 297) (2013). But in *Roesser*, the record revealed that the jury necessarily determined that the defendant acted in self-defense when it acquitted him of malice murder, felony murder and aggravated assault. Id. at 298-299. Consequently, the doctrine of collateral estoppel precluded relitigation of that issue, and because that issue of ultimate fact constituted a critical element of voluntary manslaughter, the

8

Supreme Court concluded that "double jeopardy bar[red] the State from prosecuting [the defendant] again for voluntary manslaughter." Id. at 300.

But in this case, unlike *Roesser*, the record does not reveal that Washington's sole defense was justification and that the jury's acquittal on felony murder necessitated a finding that he acted in self-defense. Here, the record shows that in addition to self-defense, Washington also sought to raise defenses of lack of causation and criminal intent. It was therefore possible for the jury to have acquitted Washington of felony murder without accepting his self defense argument. Since the closing arguments of counsel were not transcribed we must assume that Washington did in fact raise these additional defenses. See *Burton v. State*, 293 Ga. App. 822, 827 (2) (668 SE2d 306) (2008) (citations and punctuation omitted) ("It is the defendant's duty on appeal to show error and harm affirmatively by the record. [Washington] cannot meet [his] burden without providing a transcript of closing arguments, and [this] enumeration of error must be rejected for this reason[.]").

Because the lesser included offense of voluntary manslaughter was properly before the jury and the jury was deadlocked as to that offense, "the acquittal of the indicted offense of [felony] murder would not bar retrial on the lesser included

unindicted offense of voluntary manslaughter[.]" *State v. Archie*, 230 Ga. App. 253, 255 (495 SE2d 581) (1998).

3. *Prior acts evidence.*

Washington claims that the trial court erred in admitting evidence of prior bad acts. While he noted in his statement of facts that he objected to such evidence, in support of his enumeration of error, he has failed to identify precisely which evidence he now challenges or show how he was prejudiced by any such evidence. "It is not this [c]ourt's job to cull the record on behalf of the appellant to find alleged errors." *Maxwell v. State*, 290 Ga. 574, 575(2), 722 S.E.2d 763 (2012) (citation omitted). Moreover, we will not disturb a trial court's determination that such evidence is admissible absent an abuse of discretion. *Joiner v. State*, 265 Ga. App. 295, 297 (2) (593 SE2d 936) (2004). Washington has failed to carry his burden of showing reversible error. See *Gordon v. State*, 327 Ga. App. 774, 781 (5) (a) (761 SE2d 169) (2014).

4. *Severance.*

We need not address Washington's claim that his trial should have been severed from that of his co-defendant because such matter is not likely to recur on any

retrial for voluntary manslaughter. *Sales v. State*, 296 Ga. 538, 541 (2) (b) (769 SE2d 374) (2015).

I am authorized to state that Presiding Judge Phipps joins in this dissent.